# 19-3949

## In the
## United States Court of Appeals
### For the Second Circuit



JULIET ANILAO, HARRIET AVILA, MARK DELA CRUZ, CLAUDINE
GAMAIO, ELMER JACINTO, JENNIFER LAMPA, RIZZA MAULION,
THERESA RAMOS, RANIER SICHON and JAMES MILLENA,

*Plaintiffs-Counter-Defendants-Appellants,*

- and -

FELIX Q. VINLUAN,

*Plaintiff-Appellant,*

- v. -

THOMAS J. SPOTA, III, Individually and as District Attorney of Suffolk County,
OFFICE OF THE DISTRICT ATTORNEY OF SUFFOLK COUNTY,
LEONARD LATO, as an Assistant District Attorney of Suffolk County,
COUNTY OF SUFFOLK, SUSAN O'CONNOR, NANCY FITZGERALD,
and KARLA LATO, as Administrator of the Estate of Leonard Lato,

*Defendants-Appellees,*

*(See inside cover for continuation of caption)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES
## COUNTY OF SUFFOLK AND KARLA LATO,
### as Administrator of the Estate of Leonard Lato

SUFFOLK COUNTY ATTORNEY'S OFFICE
*Attorneys for Defendants-Appellees*
*County of Suffolk and Karla Lato,*
*as Administrator of the Estate of Leonard Lato*
H. Lee Dennison Building
100 Veterans Memorial Highway, PO Box 6100
Hauppauge, New York 11788
(631) 853-4049

APPELLATE INNOVATIONS
(914) 948-2240

14694

_____

- and -

SENTOSA CARE, LLC, AVALON GARDENS REHABILITATION
AND HEALTH CARE CENTER, PROMPT NURSING EMPLOYMENT
AGENCY, LLC, FRANCRIS LUYUN, BENT PHILIPSON
and BERISH RUBINSTEIN,

*Defendants-Counter-Claimants.*

_____

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

QUESTIONS PRESENTED................................................................................1

SUMMARY OF ARGUMENT ...........................................................................2

STATEMENT OF THE CASE..............................................................................5

STATEMENT OF FACTS ...................................................................................8

STANDARD OF REVIEW ................................................................................14

POINT I
THE DISTRICT COURT PROPERLY DETERMINED THAT
DEFENDANTS-APPELLEES WERE ENTITLED TO ABSOLUTE
PROSECUTORIAL IMMUNITY ......................................................................15

POINT II
THERE WAS NO VIOLATION OF THE PLAINTIFFS-APPELLANTS'
CONSTITUTIONAL RIGHTS DURING THE INVESTIGATIVE
STAGE OF THE PROSECUTION ......................................................................20

   No Constitutional Violation ..............................................................................22

   Qualified Immunity...........................................................................................27

POINT III
THERE IS NO BASIS FOR A MONELL CLAIM
AGAINST THE COUNTY.................................................................................32

   No Underlying Constitutional Violation...........................................................33

   District Attorney is a State Actor.....................................................................33

   Alleged Conduct Not Caused by a Municipal Policy .......................................36

   Causation..........................................................................................................42

CONCLUSION ................................................................44

CERTIFICATE OF COMPLIANCE .....................................45

# TABLE OF AUTHORITIES

*Anderson v. Criegton*,
483 U.S. 635 (1987) ........................................................................28

*Anderson v. Liberty Lobby Inc.*,
477 U.S. 242 (1986) .............................................................. 3, 21, 27

*Arlinghaus v. Ritenour*,
622 F.2d 629 (2d Cir.) ....................................................................22

*Ashcroft v. al–Kidd,*
563 U.S. 731, 131 S.Ct. 2074 (2011) .................................................29

*Baez v. Hennessy,*
853 F.2d 73 (2d Cir.1988) ......................................................... 34, 42

*Belot v. Wieshaupt*, No. 96 Civ. 3005,
1997 WL 218440 (S.D.N.Y. Apr. 29, 1997) ......................................25

*Betts v. Shearman*,
751 F.3d 78 (2d. Cir. 2014) .............................................................27

*Bogle-Assegai v. Connecticut*,
470 F.3d 498 ................................................................................16

*Brosseau v. Haugen*,
543 U.S. 194, 125 S.Ct. 596, (2004) .................................................29

*Buckley v. Fitzsimmons*,
509 U.S. 259 (1993) .................................................................. 18, 24

*Burns v. Reed*,
500 U.S. 478 (1991) .......................................................................18

*Cash v. County of Erie,*
654 F.3d 324 (2d Cir.2011) .............................................................40

*Celotex Corp. v. Catrett,*
477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ........................11

*City of Canton v. Harris,*
 489 U.S. 378, 109 S.Ct. 1197 (1989) .......................................................... 37, 38

*City of Los Angeles v. Heller,*
 *475 U.S. 796 (1986)* ..........................................................................33

*Collins v. City of Harker Heights,*
 503 U.S. 115 (1992) ...........................................................................33

*Connick v. Thompson,*
 563 U.S. 51 (2011) .......................................................... 36, 37, 42, 43

*Cox v. County of Suffolk,*
 780 F.Supp. 103 (E.D.N.Y.1991) ..........................................................34

*Devenpeck v. Alford,*
 543 U.S. 146, 125 S.Ct. 588 (2004) ....................................................26

*Doe v. Green,*
 593 F. Supp. 2d 523 (W.D.N.Y. 2009) ................................................34

*Fields v. Wharrie,*
 740 F.3d 1107 (7th Cir. 2014) ...........................................................19

*Fuertado v. City of New York,*
 337 F.Supp.2d 593 (S.D.N.Y.2004) ....................................................11

*Greene v. United States,*
 13 F.3d 577 (2d Cir.1994) ...................................................................17

*Harlow v. Fitzgerald,*
 457 U.S. 800 (1982) ...........................................................................28

*Hernandez v. United States,*
 939 F.3d 191 (2d Cir. 2019) ..............................................................42

*Hill v. City of New York,*
 45 F.3d 653 (2d Cir. 1995) .................................................................24

iv

*Hill v. Melvin,*
   2006 WL 1749520 (S.D.N.Y. June 27, 2006) ......................................................11

*Imbler v. Pachtman*,
   424 U.S. 409, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976) .......................................18

*Int'l Ore & Fertilizer Corp. v. SGS Control Servs., Inc.,*
   38 F.3d 1279 (2d Cir. 1994) ................................................................................21

*Jaffke v. Dunham,*
   352 U.S. 280, 77 S.Ct. 307, 1 L.Ed.2d 314 (1957) ............................................22

*Jenkins v. City of New York*,
   478 F.3d 76 (2d Cir. 2007) ......................................................................... 28, 29

*Jones v. Town of East Haven,*
   691 F.3d 72 (2d Cir.2012) ..................................................................................36

*Kanciper v. Lato*,
   2016 WL 11507274 (E.D.N.Y. Dec. 1, 2016).....................................................41

*Kennecott Copper Corp. v. Curtiss–Wright Corp.,*
   584 F.2d 1195 (2d Cir.1978) ...............................................................................22

*Kentucky v. Graham,*
   473 U.S. 159 (1985) ..............................................................................................5

*Major League Baseball Props. v. Salvino, Inc.*,
   542 F.3d 290 (2d Cir. 2008) ...............................................................................41

*Malley v. Briggs,*
   475 U.S. 335, 106 S.Ct. 1092 (1986) ..................................................................29

*Martin v. County of Suffolk,*
   2014 WL 1232906 (E.D.N.Y 2014) ....................................................................34

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
   475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ................................ 14, 27

*McCarthy v. SEC,*
    406 F.3d 179 (2d Cir.2005) .................................................................22

*McMillian v. Monroe Cnty.,*
    520 U.S. 781, 117 S.Ct. 1734 (1997) ................................................35

*Miller v. Wolpoff & Abramson, L.L.P.,*
    321 F.3d 292 (2d Cir.2003) .................................................................14

*Monell v. Dept. of Social Services*,
    436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed. 2d 611 (1978) ................................ passim

*Mullenix v. Luna*,
    136 S. Ct. 305 (2015)............................................................. 29, 31, 32

*Nationwide Life Ins. Co. v. Bankers Leasing Assoc., Inc.,*
    182 F.3d 157 (2d Cir.1999) .................................................................14

*Nicholson v. Scoppetta*,
    344 F.3d 154 (2d Cir. 2003) ...............................................................43

*Reichle v. Howards*,
    566 U.S. 658, 132 S.Ct. 2088 (2012) ................................................29

*Ricciuti v. N.Y.C. Transit Authority*,
    124 F.3d 123 (2d Cir.1997) .................................................................33

*Ricciuti v. NYC Transit Authority,*
    941 F.2d 119 ............................................................................................37

*Rubens v. Mason,*
    387 F.3d 183 (2d Cir.2004) .................................................................14

*Russo v. City of Bridgeport,*
    479 F.3d 196 (2d Cir.2007) .................................................................27

*Saucier v. Katz,*
    533 U.S. 194, 121 S.Ct. 2151, (2001) ...............................................30

*Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBC Universal Media, LLC*,
  864 F.3d 236 (2d Cir. 2017) .......................................................... 16, 17

*Tenney v. Brandhove*,
  341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951) ............................................18

*Van de Kamp v. Goldstein,*
  555 U.S. 335, 129 S.Ct. 855, 172 L.Ed.2d 706 (2009) ........................................42

*Vinluan v. Doyle*,
  873 N.Y.S.2d 72 (App. Div. 2009).......................................................31

*Walker v. City of New York*,
  974 F.2d 293 (2d Cir. 1992) .................................................... 35, 38, 40

*Weyant v. Okst*,
  101 F.3d 845 (2d Cir. 1996) .................................................................31

*Whren v. United States,*
  517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) ........................................26

*Ying Jing Gan v. City of New York*,
  996 F.2d 522 (1993) ..........................................................................33

# QUESTIONS PRESENTED

1. Did the District Court correctly determine that Defendants-Appellees Lato and Spota were entitled to absolute prosecutorial immunity for actions intimately associated with the judicial phase of the criminal process, including the decision whether to prosecute and present the case to the grand jury?

2. Did the District Court correctly determine that there was no violation of the Plaintiffs-Appellees' constitutional rights by Defendants-Appellees Lato and Spota during the investigative stage of the prosecution?

3. Did the District Court correctly determine that there was no basis for a claim against the County of Suffolk under *Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed. 2d 611 (1978) as there was no underlying violation of a constitutional right; the individual Defendants-Appellees were State actors; and that even assuming they were County actors, there was no pattern of deficiencies in the management of the Suffolk County District Attorney's Office in terms of matters such as training and/or discipline.

## SUMMARY OF ARGUMENT

The District Court correctly determined that Defendants-Appellees Lato and Spota were entitled to absolute prosecutorial immunity for actions intimately associated with the judicial phase of the criminal process, including the decision whether to prosecute and present the case to the grand jury. The finding of absolute immunity was made by the Court in its decision to grant in part the Defendants-Appellees' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). (See SPA 1)[1] Plaintiffs-Appellants' failed to seek reconsideration of that order and conceded that the determination of the Court was correct in their opposition to the Defendants-Appellees' motions for summary judgement. (See A 1556 at pg 77)[2] Indeed, Plaintiff-Appellees do not challenge the decision of the District Court in this appeal, but rather ask this Honorable Court, for the first time on appeal, to disregard years of applicable precedent and hold that the doctrine of absolute prosecutorial immunity should not apply to the Defendants-Appellees in this action. Not only is such an argument baseless, the Plaintiff-Appellees failed to raise this argument below and accordingly it should not be considered by this Court.

---

[1] Pagination preceded by "SPA" refers to the Plaintiffs-Appellants' Special Appendix. Pagination preceded by "A" refers to the Plaintiffs-Appellants' Appendix.

[2] Portions of the Plaintiff-Appellees' Memorandum in Opposition to the Defendants' motion for summary judgment were sealed below and are filed at DE 127).

In granting the Defendants-Appellees' motion for summary judgement, the District Court also correctly determine that there was no violation of the Plaintiffs-Appellants' constitutional rights by Defendants-Appellees Lato and Spota during the investigative stage of the prosecution.      While the District Court determined that the Defendants-Appellees were entitled to absolute prosecutorial immunity for some of their actions in its decision on the Motion to Dismiss per Fed.R.Civ.P. 12(b)(6), it found that the complaint plausibly plead that some of the alleged conduct may have occurred during the investigative stage of the prosecution and as such the Defendants-Appellees were not entitled to absolute immunity for that conduct.      However, after examining the available admissible evidence in the record after the completion of discovery, the Court determined that there simply was no evidence that the Defendants-Appellees violated the Plaintiffs-Appellants' constitutional rights during this phase.      The Court determined that the Plaintiffs-Appellants' proof consisted of nothing more than mere speculation and failed to set forth the "concrete particulars" that are necessary to overcome a motion for summary judgment. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242 (1986).   Of significance is that the Court did not address the issue of Qualified Immunity in its decision since it determined there was no constitutional violation in the first place. (SPA 53 at fn. 35).

The Defendants-Appellees also respectfully submit that the Plaintiffs-Appellants have not challenged the decision of the District Court that there was no evidence of a constitutional violation during the investigative stage. Rather Plaintiffs-Appellants argue that the Defendants-Appellees are not entitled to Qualified Immunity for their conduct during the investigative stage of the prosecution. As noted, the Court below never made a determination with respect to Qualified Immunity. By failing to submit an opposition to the determination that the District Court found no constitutional violation, the Plaintiffs-Appellants have waived any opportunity to do so before this Court. In any event, the Defendants-Appellees are also entitled to Qualified Immunity.

Further, the District Court correctly determine that there was no basis for a claim against the County of Suffolk under *Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed. 2d 611 (1978) as there was no underlying violation of a constitutional right. The Court also correct in determining that, since the alleged acts of the individual Defendants-Appellees were done in connection with the decision to present the case to the Grand Jury and initiate charges, they were proceeding as State actors and there could be no liability against the municipal County of Suffolk. Lastly, the Court correctly decided that even assuming the Defendants-Appellees were County actors, there was no pattern of deficiencies in the management of the Suffolk County District Attorney's Office in

terms of matters such as training and/or discipline sufficient to hold the County liable for the acts of the District Attorney. (SPA 53 at fn. 36).

## STATEMENT OF THE CASE

In 2006, all of the Plaintiffs-Appellants (save Vinluan) were employed in some capacity by the co-defendants Sentosa Care (Sentosa) and/or Prompt Nursing Employment Agency (Prompt). The claims before the Court arise out of events that occurred on April 7, 2006 wherein the Plaintiffs-Appellees, after having consulted with Plaintiff-Appellant Vinluan, all resigned their employment at the same time. In March of 2007 an indictment was returned by a Suffolk County Grand Jury against all of the Plaintiffs-Appellants relating to the conduct surrounding the resignations. Defendant-Appellee Thomas J. Spota, III was the District Attorney of Suffolk County at the time the matter was presented to the Grand Jury, and the presentation of evidence to the Grand Jury was conducted by Defendant-Appellee Assistant District Attorney Leonard Lato.[3] In October of 2009 the indictment was dismissed as to all the plaintiffs.

In January of 2010, the plaintiffs filed the original complaint in this action pursuant to 42 USC § 1983 alleging certain conduct on the part of Suffolk District

---

[3] Leonard Lato died in September of 2018. Karla Lato, as Administrator of the Estate of Leonard Lato has been substituted for Leonard Lato individually. To the extent that the claim against Leonard Lato is construed in his official capacity, it is "treated as suit against the [governmental] entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

Attorney Thomas J. Spota and Assistant District Attorney Leonard Lato, all of which related to the indictment of the plaintiffs by a Suffolk County grand jury for various crimes and offenses.[4]    The complaint filed by the plaintiffs alleged several cause of action against the Suffolk County defendants and the Sentosa defendants all relating to the indictment.    The first cause of action alleged that Spota and Lato "acted in concert" with the Sentosa defendants to "secure the indictment of the plaintiffs".  The second cause of action alleged a claim that Spota failed to supervise his staff resulting in the "indictment being procured through improper means and in violation of the constitutional rights of the plaintiffs".  The third cause of action alleged a conspiracy between the Sentosa defendants and Spota and Lato resulting in the indictment of the plaintiffs.  The fourth cause of action was a claim for malicious prosecution against the defendants for causing the plaintiffs to be indicted and prosecuted.  The fifth and last cause of action against Spota and Lato sounded in false arrest relating to the surrender and confinement of the plaintiffs after they had been indicted.    The sixth cause of action was against the Sentosa defendants only.

The County, Lato and Spota, and the Sentosa defendants moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that the

---

[4] This brief is submitted on behalf of the County of Suffolk and Leonard Lato.  Thomas J. Spota is represented by Stephen O'Brien, Esq. who is submitting a separate brief on behalf of Mr. Spota.

complaint failed to state a claim upon which relief could be granted, that Lato and Spota were entitled to absolute prosecutorial immunity for their conduct, and that the complaint failed to establish a *Monell* claim against the County. While this motion was pending, the plaintiffs filed an amended complaint adding some additional facts, but in many respects mirrored the original complaint. The Court requested supplemental briefing on the amended complaint, and thereafter issued a decision granting the motions to dismiss in part, and denying them in part. (SPA 1).

In ruling on the 12(b)(6) motion, the Court dismissed most of the claims against the individual County defendants (Lato and Spota) on the grounds of absolute prosecutorial immunity. The Court permitted however:

> "a plausible (but limited) Section 1983 claim against the individual County defendants—based upon the alleged violation of due process in the investigative stage prior to the preparation of the case for the Grand Jury (including the alleged fabrication of evidence) which resulted in a subsequent deprivation of liberty—survives a motion to dismiss, as does a Section 1983 conspiracy claim to do the same with the Sentosa defendants." (SPA 1 at *4).

At the conclusion of discovery the Defendants-Appellees moved for summary judgment pursuant to Fed.R.Civ.P Rule 56. On November 28, 2018, Untied States District Judge Joseph F. Bianco granted the Defendants-Appellees County of Suffolk, Lato and Spota's motions in their entirety. (SPA 53). In granting the motion, the Court determined that there was no violation of the

Plaintiffs-Appellants' constitutional rights by Defendants-Appellees Lato and Spota during the investigative stage of the prosecution. Since there was no evidence of a violation of the Plaintiff-Appellees rights in the first place, the Court did not address the issue of Qualified Immunity in its decision.

For the same reason (that there was no underlying constitutional violation) the District Court determine that there was no basis for a claim against the County of Suffolk under *Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed. 2d 611 (1978). The Court also concluded that, since the alleged acts of the individual Defendants-Appellees were done in connection with the decision to present the case to the Grand Jury and initiate charges, they were proceeding as State actors and there could be no liability against the municipal County of Suffolk. Lastly, the Court correctly decided that even assuming the Defendants-Appellees were County actors, there was no pattern of deficiencies in the management of the Suffolk County District Attorney's Office in terms of matters such as training and/or discipline sufficient to hold the County liable for the acts of the District Attorney. (SPA 53 at fn. 36).

The instant appeal by Plaintiffs-Appellants ensued.

## STATEMENT OF FACTS

The operative facts for the purpose of this appeal follow. On April 7, 2006 all of the nurse Plaintiff-Appellees were employed by Prompt Nursing

Employment Agency and assigned to work at Avalon Gardens Rehabilitation Center in Smithtown, New York.   (A 302, Amended Complaint paragraph 40). The nurse plaintiffs were assigned at Avalon Gardens to the pediatric ventilator unit.    The children in the pediatric ventilator unit required 24 hour care and supervision to ensure their health and safety.     If there were not enough nurses available to take care of the children it would be unsafe for the children.  (A 337 at *118).     Similarly, if there weren't enough people to cover a shift it would be unsafe for the children (A 337 at *118).    A nurse's shift at the Avalon pediatric vent unit had to be covered because the duties and responsibilities of taking care of the children were so great (and the children could not do it for themselves) that there was a need for skilled nursing persons to do the work.  (A 348  at * 136)

At approximately 5:30 p.m. on April 7, 2006  all of the nurse plaintiffs resigned their employment at the same time by submitting written letters of resignation to the Avalon facility.    (A 302 at paragraph 48, A 760, letters of resignation)    In addition to the nurse plaintiffs, many other nurses, working in other nursing facilities affiliated with Sentosa and employed by Prompt, resigned their employment at or about the same time as the nurse plaintiffs.  (A 302 at paragraph 49).   Prior to resigning the nurse plaintiffs talked about whether their simultaneous resignation would impair the ability of Avalon to render adequate care for the patients. (A 354 at *148).    Prior to resigning the nurse plaintiffs had

concern whether the facility would get people to cover their shifts, and when they resigned the nurse plaintiffs did not know if Avalon would be able to get adequate coverage for their shifts. (A 354 at * 148).

When the nurses resigned on April 7, 2006 they were aware that it was absolutely necessary to have someone cover shifts if nurses did not show up for their shifts. (A 348 at *136-137) At the time of their resignation of the nurses created the real potential that it would impair the delivery of adequate care to the patients. (A 361 at *197).

On April 26, 2006, Susan O'Connor, an administrator at the Avalon Gardens facility, went to the Suffolk County Police Fourth Precinct to make a report regarding the events of April 7, 2006. (A 361 at *111-114; A 373 Suffolk County Police Field Report) The Suffolk County Police Department did not expressly decline to investigate the complaint by Ms. O'Connor and never made a determination that no crimes had been committed by the nurse plaintiffs.

Between January 30, 2007 and March 6, 2007, Defendant-Appellee Lato presented evidence to the grand jury regarding the events of April 7, 2006. (A 374 Grand Jury Minutes). Prior to the presentation of the case to the grand jury all Plaintiffs-Appellants were aware that they were targets of the grand jury presentation and knew they could testify before the grand jury if they so desired. (A750 Letters to plaintiffs advising of grand jury presentation; A 770 at *260-270;

A 785 at *99-100; A 788 at *118-120; A 792 at *107-108; A 795 at *78-80; A 799 at *93-95; A 803 at *175-179).

In presenting the case to the grand jury no exculpatory evidence was withheld from the grand jury based upon an agreement between Lato and any of the Sentosa defendants, and the plaintiffs can produce no proof that exculpatory evidence was withheld from the grand jury based upon an agreement between Lato and any of the Sentosa defendants.[5]  Moreover, at no time did Lato request, conspire or importune any witness that testified before the grand jury to lie or fabricate evidence, and the plaintiffs can produce admissible evidence that he did so.

Prior to testifying in the Grand Jury Sentosa Defendant Bent Philipson only met one time with Lato and that was on the day of his grand jury testimony.  (A-

---

[5] The defendants may point to the absence of evidence in the record to discharge its burden on an issue for which the plaintiff has the burden of proof, in this case, *inter alia*,  that there was no exculpatory evidence withheld based on an agreement between Lato and Sentosa, and that Lato never requested, conspired or importuned any witness that testified before the grand jury to lie or fabricate evidence. The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents ... [and] affidavits or declarations," Fed.R.Civ.P. 56(c)(1)(A), "which it believes demonstrate [s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may also meet its initial burden that there is no genuine dispute by "showing ... that [the] adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1)(B); *Hill v. Melvin,* No. 05 Civ. 6645, 2006 WL 1749520, at *4 (S.D.N.Y. June 27, 2006) ("The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof."); *Fuertado v. City of New York,* 337 F.Supp.2d 593, 599 (S.D.N.Y.2004) ("The moving party may use a memorandum or brief to 'point to' the absence of evidence and thereby shift to the nonmovant the obligation to come forward with admissible evidence supporting its claim.").

809 at *208-209).    Philipson's meeting with Lato only lasted two to three minutes.   (A 809 at *237-238).   Lato never instructed defendant Philipson what to say in the Grand Jury (A 809 at *237-238), nor did he ever ask Philipson to lie in the grand jury.   (A 809 at * 237-238).   Defendant Philipson did not speak to Lato prior to the day of the grand jury.  (A 809 at *237-238).

At a point prior to the grand jury presentation, Susan  O'Connor met with defendant Lato at her office and Lato told her he did not know whether they were going to continue or not with the case.  (A 361 at *125).   Prior to the grand jury presentation Lato came to Ms. O'Connor's office a second time to gather documents and take a tour of the unit at Avalon.  (A 361 at *126)  Between the time she learned she was going to testify in grand jury and the date of her testimony Ms. O'Connor did not speak to anyone regarding her potential grand jury testimony.  (A 361 at *127).   Ms. O'Connor did not meet with Lato prior to her testimony regarding the questions he was going to ask in the grand jury.  (See A 361 at *128).   Plaintiffs-Appellants' have no evidence indicating that Lato (or O'Connor) agreed to fabricate evidence during those meetings.

There is no evidence in the available admissible record, nor can the plaintiffs produce any evidence that any witness who testified in the grand jury ever discussed their grand jury testimony with Lato during the investigative phase of the case.

On March 6, 2007, the grand jury returned a true bill of indictment against all of the plaintiffs for Endangering the Welfare of a Child, N.Y. Pen. Law § 260.10(1); Endangering the Welfare of a Disabled Person, N.Y. Pen Law § 260.25; and Conspiracy in the Sixth Degree, N.Y. Pen Law § 105.00. (A 374). On that same date, the grand jury returned a true bill of indictment against Plaintiff- Appellant Vinluan for Criminal Solicitation in the Fifth Degree, N.Y. Pen Law § 100.00. (A 374). The grand jury was properly charged on the law regarding the charges that were presented. (A 374).

At a point after the indictment was handed up, all of the plaintiffs moved to dismiss the indictment before the trial court. Among the arguments made by the plaintiffs were that the grand jury was not properly charged on the law; that the prosecutor withheld exculpatory material, and that the prosecution of the plaintiffs violated their Thirteenth Amendment and First Amendment Rights. On September 27, 2007 and September 28, 2007, the Hon. Robert W. Doyle, issued decisions denying the plaintiffs' motions and finding that the grand jury was properly charged on the law, and noted that the *"en masse"* resignations of the nurses at a time when they were entrusted with the care of certain physically disabled children was sufficient for the grand jury to charge them with the specific crimes in the indictment. (A 814; A 817). Judge Doyle also found that the consequences of the

mass resignations of the nurses "could have had disastrous consequences for the very patients with whose care they were entrusted." (A 817).

## STANDARD OF REVIEW

The Court reviews a District Court's grant of summary judgment *de novo*. *See, e.g., Rubens v. Mason,* 387 F.3d 183, 188 (2d Cir.2004). Summary judgment is appropriate when the moving party shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 300 (2d Cir.2003). The Court is required to resolve all ambiguities and draw all inferences in favor of the non-movant. *Nationwide Life Ins. Co. v. Bankers Leasing Assoc., Inc.,* 182 F.3d 157, 160 (2d Cir.1999). Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## POINT I

## THE DISTRICT COURT PROPERLY DETERMINED
## THAT DEFENDANTS-APPELLEES WERE ENTITLED TO
## ABSOLUTE PROSECUTORIAL IMMUNITY

The District Court correctly determined that Defendants-Appellees Lato and Spota were entitled to absolute prosecutorial immunity for actions intimately associated with the judicial phase of the criminal process, including the decision whether to prosecute and present the case to the grand jury. The finding of absolute immunity was made by the Court in its decision to grant in part the Defendants-Appellees' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). (See SPA 1) Plaintiffs-Appellants failed to seek reconsideration of that order and in fact conceded that the determination of the Court was correct in their opposition to the Defendants-Appellees motions for summary judgement. (See A 1556 at pg 77)

Indeed, Plaintiffs-Appellants do not challenge the decision of the District Court in this appeal, but rather ask this Honorable Court, for the first time on appeal, to disregard years of applicable precedent and hold that the doctrine of absolute prosecutorial immunity should not apply to the Defendants-Appellees in this action. Not only is such an argument baseless, the Plaintiff-Appellees failed to raise this argument below and accordingly it should not be considered by this Court.

As noted above, the Plaintiffs-Appellants never sought reconsideration of the District Court's order granting in part the Defendants-Appellees' motion to dismiss pursuant to Fed.R.Civ.P 12(b)(6) on the grounds that the bulk of the alleged conduct was intimately associated with the judicial phase of the criminal process, and therefore they were entitled to absolute prosecutorial immunity. Moreover, in their opposition to the Defendant Appellees' motion for summary judgment the Plaintiffs-Appellants conceded that the determination of the Court was correct.

Now, having failed to raise the argument below, notwithstanding the opportunity to do so, and without any basis in law, the Plaintiffs-Appellants ask this Court to find that the decades (if not centuries old) common law doctrine of absolute prosecutorial immunity should not apply in this case. This argument is baseless and should be rejected. More significantly, the Defendants-Appellees respectfully submit that this argument shouldn't even be considered by this Court as the Plaintiffs-Appellants failed to raise it below.

"It is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." *Tannerite Sports, LLC v. NBC Universal News Grp., a division of NBC Universal Media, LLC*, 864 F.3d 236, 253 (2d Cir. 2017) citing, *Bogle-Assegai v. Connecticut*, 470 F.3d 498, 504

(2d Cir.2006) quoting, *Greene v. United States*, 13 F.3d 577 (2d Cir.1994).

Although the Court has discretion to consider such arguments, the circumstances

normally do not militate in favor of an exercise of discretion to do so "where those

arguments were available to the parties below and they proffer no reason for their

failure to raise the arguments. *Tannerite* at 253.

Plaintiffs-Appellants failed to put before the District Court their argument

that the doctrine of absolute prosecutorial immunity should be abolished with

respect to the Defendant-Appellants, either by way of a motion for reconsideration

under Fed.R.Civ.P. 54 or through their opposition to the Defendant-Appellants

motion for summary judgment. Here, the Plaintiffs-Appellants provide no good

reason for their failure to have requested below the relief they now seek from this

Court, particularly given that the new argument relies upon on facts known to them

at the time of the earlier motions. *Id.* Based on this unexplained failure, the

Defendant-Appellants respectfully submit that this Court should not entertain this

newly advance argument at all.

In the event the Court choses to consider this argument, the Defendants-

Appellees submit it has no basis in law or fact. The concept of common law

immunities spans decades if not centuries. The issue of whether traditional

common law immunities were abrogated by the Civil Rights Act of 1871 (and §

1983 of that Act) was considered by the United States Supreme Court nearly 70

years ago. See, *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). In *Tenney* the Court concluded that immunities "well grounded in history and reason" had not been abrogated "by covert inclusion in the general language" of §1983. The decision established that §1983 is to be read in harmony with general principles of tort immunities and defenses rather than in derogation of them.

In 1976 the Supreme Court re-affirmed that absolute prosecutorial immunity barred §1983 lawsuits against prosecutors when they act within the scope of their prosecutorial duties. *Imbler v. Pachtman*, 424 U.S. 409, 420, 96 S. Ct. 984, 990, 47 L. Ed. 2d 128 (1976). In subsequent decisions the Court defined the contours of prosecutorial immunity, *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993); and recognized there may be times when acting in an investigatory capacity a prosecutor may not be entitled to absolute immunity. *Burns v. Reed*, 500 U.S. 478 (1991). At no time has the Supreme Court, or any Circuit determined that the doctrine of absolute prosecutorial immunity has been abrogated by the statutory provisions § 1983.

Here, without citing to any admissible evidence, the Plaintiffs-Appellants ask this Court to simply disregard the entire body of law (and its underlying rational) that has served as the foundation for the traditional immunity protections

afforded to prosecutors for years. This Court should deny such an unsupported baseless request.

Moreover, Plaintiffs-Appellants seek to have the Court abandon the absolute immunity doctrine by essentially arguing it is unfair and leaves potential plaintiffs with no remedy for purposeful bad acts of overzealous prosecutors. However, as Plaintiffs-Appellants point out through the very case they cite in support of their argument (*Fields v. Wharrie,* 740 F.3d 1107 (7th Cir. 2014), a remedy will lie where a prosecutor engages in unconstitutional conduct outside of the judicial phase (by for example manufacturing evidence) but later because of that conduct an individual suffers a deprivation during the "prosecutorial" phase. It was this exact theory of causation that Judge Bianco relied upon in permitting some of the Plaintiffs-Appellants' claims against ADA Lato to survive the initial motion to dismiss.[6] Plaintiffs-Appellants provide no sound basis for this Court to upend traditional common law immunity protections that have existed for years and their request to do so should be denied.

---

[6] In permitting a portion of the complaint to proceed, the Court noted that, although the alleged violation of presenting false information to the grand jury itself was protected by absolute immunity, if the false evidence was created during the investigative stage (and therefore was not entitled to absolute immunity) a claim could lie where that evidence was then used during the grand jury presentation and if it then resulted in a constitutional violation. (SPA1 at fn. 18). It was this allegation, however, that the Court later determined on summary judgment was not supported by the evidence in the record.

## POINT II

## THERE WAS NO VIOLATION OF THE PLAINTIFFS-APPELLANTS' CONSTITUTIONAL RIGHTS DURING THE INVESTIGATIVE STAGE OF THE PROSECUTION

In granting the Defendants-Appellees' motion for summary judgement, the District Court also correctly determine that there was no violation of the Plaintiffs-Appellants' constitutional rights by Defendants-Appellees Lato and Spota during the investigative stage of the prosecution. While the District Court determined that the Defendants-Appellees were entitled to absolute prosecutorial immunity for some of their actions in its decision on the Motion to Dismiss per Fed.R.Civ.P. 12(b)(6), it found that the complaint plausibly plead that some of the alleged conduct may have occurred during the investigative stage of the prosecution and as such the Defendants-Appellees were not entitled to absolute immunity for that conduct at the pleadings stage. However, after examining the available admissible evidence in the record after the completion of discovery, the Court determined that there simply was no evidence that the Defendants-Appellees violated the Plaintiffs-Appellants' constitutional rights during this phase. The Court determined that the Plaintiffs-Appellants' proof consisted of nothing more than mere speculation and failed to set forth the "concrete particulars" that are necessary to overcome a

motion for summary judgment. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242 (1986). Of significance is that the Court did not address the issue of Qualified Immunity in its decision since it determined there was no constitutional violation in the first place.

The Defendants-Appellees respectfully submit that Plaintiffs-Appellants have failed to submit any opposition to the ruling of the District Court that there was no evidence in the admissible record that Defendant Lato or Defendant Spota violated the Plaintiffs' constitutional rights during the investigative stage of the prosecution. Instead, Plaintiffs-Appellants argue, albeit incorrectly, that the Court below improperly found that the Defendant-Appellants were entitled to Qualified Immunity for their conduct during the investigative stage. (See Plaintiffs-Appellants' Brief at *59). As noted, the Court below never made such a ruling. The Plaintiffs-Appellants do not, however, directly challenge the determination by the Court that there was no constitutional violation committed at all. As such they have waived any opportunity to do so before this Court.

Further, the Defendants-Appellees submit that we may raise the finding of the District Court that there was no constitutional violation at this time in our responding brief before this Court, under the general rule that the appellee may seek to sustain a judgment on any grounds with support in the record. *Int'l Ore & Fertilizer Corp. v. SGS Control Servs., Inc.,* 38 F.3d 1279, 1285–86 (2d Cir. 1994),

*citing Jaffke v. Dunham,* 352 U.S. 280, 281, 77 S.Ct. 307, 308–09, 1 L.Ed.2d 314 (1957) (per curiam) (cross-appeal not necessary to rule on admissibility of affidavit stricken by district court); *Arlinghaus v. Ritenour,* 622 F.2d 629, 638 (2d Cir.) (substituting grounds for affirmance without cross-appeal), *cert. denied,* 449 U.S. 1013, 101 S.Ct. 570, 66 L.Ed.2d 471 (1980); *Kennecott Copper Corp. v. Curtiss–Wright Corp.,* 584 F.2d 1195, 1206 (2d Cir.1978). Lastly, we submit that the plaintiff is precluded from raising or opposing the finding that there was no evidence of a constitutional violation in their reply brief on this appeal. *McCarthy v. SEC,* 406 F.3d 179, 186 (2d Cir.2005) (it is well-settled that "arguments not raised in an appellant's opening brief, but only in his reply brief, are not properly before an appellate court even when the same arguments were raised in the trial court."

### *No Constitutional Violation*

As noted above, the Court permitted the claim against ADA Lato to proceed alleging a violation of due process in the investigative stage prior to the preparation of the case for the Grand Jury, including the alleged fabrication of evidence. However, after the completion of discovery, and the depositions of all parties conducted, the Plaintiffs-Appellants could not, and still cannot, produce any proof that any evidence was fabricated, or that any testimony before the grand jury was false. It is not enough for a plaintiff to simply establish that some of the alleged

conduct was engaged in by a prosecutor in an investigative role, the plaintiff must also identify some wrongdoing by the defendants in their investigative capacity.

In ruling on the County's motion to dismiss and applying the plausibility standard that is appropriate for deciding a motion pursuant to FRCP 12(b)(6), this Court allowed:

> "a plausible (but limited) Section 1983 claim against the individual County defendants—based upon the alleged violation of due process in the investigative stage prior to the preparation of the case for the Grand Jury (including the alleged fabrication of evidence) which resulted in a subsequent deprivation of liberty." (SPA 1 at * 4).

The only "wrongdoing" by ADA Lato that is alleged to have occurred during the investigative stage of the case is the claimed fabrication of evidence wherein Lato purportedly conspired with Philipson, or some other unnamed Sentosa principal to manufacture evidence through false testimony.   The Court determined that, if true, the fabrication of evidence, or the manufacturing knowingly false testimony during the investigative stage, could still result in liability of ADA Lato, if it was later presented to the grand jury with the knowledge that it would result in the indictment of the plaintiffs, notwithstanding the absolute immunity that would apply to the actual presentation of that evidence to the grand jury.

However, a review of the grand jury minutes and the testimony of all of the Sentosa affiliated witnesses, reveals that no false evidence, whether through testimony or documents, was ever presented during the presentation of the case.

Even if some evidence can be said to be false, there is no evidence in the available record that 1) Lato knew the evidence was false or 2) that he learned of the evidence (or conspired to create it) during the investigative stage of the case. Indeed, the only deposition testimony from any of the several grand jury witnesses reveals that they never even spoke to Lato about the content of their grand jury testimony until the very day they were to testify.    Bent Philipson testified that he had not spoken to Lato at all until the day he testified in the grand jury, and said he only met with him for minutes.    Susan O'Connor, said Lato had come to the Avalon facility on more than one occasion, but it was for the purpose of gathering documents and touring the pediatric unit at the facility (it should also be noted that the Court dismissed the claims against Ms. O'Connor, so there can be no  claim that she conspired to manufacture evidence with Lato).    Even assuming that Lato conspired with Philipson to present false evidence to the grand jury on the day of the presentation, Lato would still be entitled to absolute immunity because the alleged fabrication would have taken place during the preparation of the case for the grand jury, and would clearly be considered prosecutorial.   *Hill v. City of New York*, 45 F.3d 653 (2d Cir. 1995), *citing  Buckley v. Fitzsimmons*, 509 U.S. 259 (1993).

The undisputed facts in the available admissible record establish that Lato never fabricated any evidence, let alone conspired with anyone to do so, and that

no false evidence was presented to the grand jury.   Moreover, the Plaintiffs-Appellants cannot rebut the Defendant-Appellants contention that they lack evidence of any claimed fabrication of evidence.   As the Plaintiffs-Appellants cannot produce any evidence of claimed fabrication, they fail to demonstrate the existence of a genuine issue of material fact that must be decided by a jury.

As with their response to the summary judgment motion below, the Plaintiffs-Appellants attempt to create an issue of fact that Lato manufactured evidence by referring his interactions with Plaintiff-Appellant Vinluan prior to the case being presented to the grand jury.   These arguments, however, are meritless as they fail to reveal any evidence of misconduct or *wrongdoing* on the part of ADA Lato during the investigative stage of the case.   *Belot v. Wieshaupt*, No. 96 Civ. 3005, 1997 WL 218440 at *7 (S.D.N.Y. Apr. 29, 1997) ("[I]t is not enough for plaintiff to allege simply that defendants 'performed investigative functions' or that they were 'involved' in the criminal investigation, plaintiff must also identify wrongdoing by defendants in their investigative capacity.")

In their brief, Plaintiffs-Appellants cite to what they claim is evidence of Lato's decision to "target" defendant Vinluan and his subjective opinion of Vinluan based upon Lato's belief that Vinluan lied to him.   Such evidence, even if true does nothing to establish or support a claim that Lato fabricated evidence during the investigative stage of this case.   Moreover, to the extent the plaintiff is

attempting to establish a lack of probable cause to charge the plaintiffs, Lato's personal subjective beliefs are irrelevant. *See*, *Devenpeck v. Alford,* 543 U.S. 146, 153, 125 S.Ct. 588 (2004) (citing *Whren v. United States,* 517 U.S. 806, 812-13, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

Again, as below, Plaintiffs-Appellants discuss the testimony of Attorney Sarah Lichtenstein in the grand jury itself, and argue that her testimony was introduced to improperly cast Vinluan as a competitor of the Sentosa defendants. However, as has already been determined by the Court below, and has been conceded by the Plaintiffs-Appellants, any conduct engaged in by Lato during the preparation for, or within the grand jury is absolutely immune from suit. Further, the act of faxing an advertisement relating to Mr. Vinulan's immigration practice alone is insufficient to establish that Lato conspired with Ms. Lichtenstein, or anyone else for that matter, to introduce false testimony to the grand jury; and again, since this conduct was done in preparation for the grand jury, absolute immunity would apply.

The Plaintiffs-Appellants make several additional wholly unsupported and conclusory statements that Lato "presented fabricated evidence to the grand jury" (See Plaintiffs-Appellants' Brief at * 64 and 65), and that his "creation of evidence prior to the presentation of the case to the grand jury vitiates his right" to absolute immunity. (See Plaintiffs-Appellants' Brief at * 65)    This is kind of evidence,

which is "merely colorable, conclusory or speculative", is exactly the type which is insufficient to overcome a motion for summary judgment. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242 (1986). The plaintiffs must do more than cast mere "metaphysical doubt" upon the evidence produced by the defendants. *Matsushita*, 475 U.S. at 586. Simply stated, the plaintiffs have failed to cite to any admissible evidence whatsoever that Lato, or any defendant conspired to fabricate evidence, or agreed to testify falsely, or engaged in any *wrongdoing,* during the investigative stage of this case. Accordingly, the claim decision of the District Court that there was no violation of the Plaintiffs-Appellants' constitutional rights during the investigative stage of the prosecution should be affirmed.

## *Qualified Immunity*

Although the District Court found it unnecessary to address the issue of qualified immunity, the Defendant-Appellants respectfully submit that, for conduct that they are consider to be absolutely immune, they are entitled to qualified immunity.

Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law. *Russo v. City of Bridgeport,* 479 F.3d 196, 211 (2d Cir.2007), *Betts v. Shearman*, 751 F.3d 78 (2d.

Cir. 2014) *citing*, *Jenkins v. City of New York*, 478 F.3d 76, at 88 (2d Cir. 2007); (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), and citing *Anderson v. Criegton*, 483 U.S. 635, 641 (1987). An [official's] determination is objectively reasonable if '[officials] of reasonable competence could disagree on whether the probable cause test was met." *Jenkins*, *supra* at 87.

Defendant-Appellant Lato is entitled to qualified immunity for any conduct for which he is not absolutely immune. As noted above, to the extent that it can be argued that any conduct by ADA Lato, violated the constitutional rights of the plaintiffs in the investigative stage of the case, the defendants submit that probable cause exited for the ultimate charges that were brought against the plaintiffs, independent of any alleged fabrication of evidence, and as such there can be no claim for a denial of their due process rights, as the alleged deprivation resulted in no cognizable injury.

While the defendants submit that the admitted conduct of the plaintiffs regarding their *en masse* resignation while aware of the risk of harm that could come to their patients if their subsequent shifts could not be covered, established probable cause, the admitted conduct at the very least supported 'arguable' probable cause, and ADAs Lato's reliance upon his knowledge of that conduct was not objectively unreasonable. Since his conduct was not objectively unreasonable

he is entitled to qualified immunity from suit.  see *Jenkins*, *supra*, at 88.  (2d Cir. 2007)

More significantly, it cannot be said, that at the time of his actions ADA Lato's conduct violated clearly established law, especially in light of the two existing, but inconsistent court decisions relating to the very facts of this case. The Supreme Court has recently instructed that "a clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308-09 (2015); *citing*, *Reichle v. Howards*, 566 U.S. 658, 132 S.Ct. 2088, (2012)  "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd,* 563 U.S. 731, 741, 131 S.Ct. 2074 (2011). Put simply, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 (1986).

In *Mullinex*, the Court went on to state: "We have repeatedly told courts ... not to define clearly established law at a high level of generality." *Mullinex* 308-309, *citing al–Kidd, supra,* at 742, 131 S.Ct. 2074.  The dispositive question is "whether the violative nature of *particular* conduct is clearly established." *Ibid.* (emphasis added). This inquiry " 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' " *Brosseau v. Haugen,* 543

U.S. 194, 198, 125 S.Ct. 596, (2004) (*per curiam*)(quoting *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, (2001).

In examining the conduct of ADA Lato it is not enough to simply determine that it may have been clearly established in 2006 that criminal suspects had a right to be free from prosecution without probable cause. The Supreme Court instructs that the inquiry must go further and examine whether the violative nature of *particular* conduct is clearly established and whether existing precedent has placed the statutory or constitutional question beyond debate.

The defendant-appellants submit, that in regard to the particular conduct of ADA Lato, both in the investigative stage of the case, and in his presentation of the matter to the grand jury, it cannot be said that at the time of the events it was clearly established that such conduct would be violative of a Plaintiffs-Appellants' constitutional rights. As noted above, the trial court reviewed the entire grand jury minutes in this case, and considered not only the sufficiency of the presentation, but also entertained the Plaintiffs-Appellants' unique arguments that their First and Thirteenth Amendment rights were being violated. In denying the plaintiffs request to dismiss the indictment, Judge Doyle determined that the charges against them were supported by probable cause and that the conduct of the nurses could have resulted in "disastrous consequences" to the children. (See Exhibits R and S, decisions of Judge Robert Doyle, dated September 27 and 28, 2007). However,

in granting the plaintiffs' subsequent Writ of Prohibition, the Appellate Division, while finding that there could be time when an Endangering the Welfare of a Child charge could be brought, found that *factually*, a risk of harm was not "imminent" and that danger was not 'extreme." *Matter of Vinluan v. Doyle*, 873 N.Y.S.2d 72 (App. Div. 2009). The very fact that two different Courts reached markedly different conclusions as to the application of the law to the facts of this case, underscores that the alleged violative nature of the *particular* conduct in this case was not clearly established and that there was no existing precedent that would have  placed the statutory or constitutional question beyond debate.

Plaintiffs-Appellants' argument that the reversal of the trial court's decision does not confer jurisdiction is of no moment. *Citing Weyant v. Okst*, 101 F.3d 845 (2d Cir. 1996). The defendants are not arguing in this context that Judge Doyle's decision in and of itself establishes probable cause. Rather, the fact that Judge Doyle reached a different conclusion than the Appellate Division on whether there was probable cause, confirms that the law as not clearly established that to charge the Plaintiffs-Appellants would result in a violation of their constitutional rights. *See*, *Mullenix v. Luna*, 136 S. Ct. 305, 308-09 (2015). Accordingly, ADA Lato is entitled to qualified immunity.

Since it cannot be said that the law was clearly established that under the specific facts of this unique case, and the manner in which the New York State

Appellate Division suspended the prosecution, that prosecuting the Plaintiffs-Appellants would rise to the level of violation of their constitutional rights, ADA Lato would be entitled to qualified immunity. *See*, *Mullenix v. Luna*, 136 S. Ct. 305, 308-09 (2015).

## POINT III

### THERE IS NO BASIS FOR A MONELL CLAIM
### AGAINST THE COUNTY

The District Court correctly determine that there was no basis for a claim against the County of Suffolk under *Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed. 2d 611 (1978) as there was no underlying violation of a constitutional right. The Court also correct in determining that, since the alleged acts of the individual Defendants-Appellees were done in connection with the decision to present the case to the Grand Jury and initiate charges, they were proceeding as State actors and there could be no liability against the municipal County of Suffolk. Lastly, the Court correctly decided that even assuming the Defendants-Appellees were County actors, there was no pattern of deficiencies in the management of the Suffolk County District Attorney's Office in terms of matters such as training and/or discipline sufficient to hold the County liable for the acts of the District Attorney. (SPA 53 at fn. 36).

## No Underlying Constitutional Violation

It is well settled that in order to recover against a government entity pursuant to §1983, a plaintiff must demonstrate facts that one of its' customs and/or policies caused the subject constitutional violation. *Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed. 2d 611 (1978). It is equally clear to prevail on a claim against a municipal defendant, the plaintiff must as a prerequisite establish an underlying constitutional violation on the part of the individual municipal actors. *Monell v. Depart. of Soc. Serv. of the City of New York,* 436 U.S. 658 (1978); *Collins v. City of Harker Heights*, 503 U.S. 115 (1992); *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986); *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 132 (2d Cir.1997). The District Court found no evidence of a constitutional violation during the investigative stage of the prosecution, and the Plaintiffs-Appellants have waived their ability to challenge that decision. Even if permitted to raise the issue before this Court, the admissible available evidence in the record reveals that there was no constitutional violation. Accordingly, there can be no viable claim against the County.

## District Attorney is a State Actor

The claims against the County must also be dismissed because in New York a county cannot be held liable for the prosecutorial acts of a district attorney, because the DA acts in that capacity on behalf of the state, not the county. *See Ying*

*Jing Gan v. City of New York,* 996 F.2d 522, 535–36 (1993) ("[A] District Attorney is not an officer or employee of the municipality but is instead a quasi-judicial officer acting for the state in criminal matters") (internal quotation marks omitted); *Baez v. Hennessy,* 853 F.2d 73, 77 (2d Cir.1988) ( "[w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the state not the county"), *cert. denied,* 488 U.S. 1014, 109 S.Ct. 805, 102 L.Ed.2d 796 (1989); *Cox v. County of Suffolk,* 780 F.Supp. 103, 108 (E.D.N.Y.1991) (county could not be held liable under § 1983 for acts by a DA in connection with grand jury proceedings). Any relevant policies concerning grand jury investigations were not policies of the County—which lacked the authority to set such policies—but policies of the DA, acting on behalf of New York State. *Doe v. Green*, 593 F. Supp. 2d 523, 534 (W.D.N.Y. 2009) *citing Baez; see also Martin v. County of Suffolk*, 2014 WL 1232906 (E.D.N.Y 2014). A district attorney's powers and duties in connection with the prosecution of a criminal proceeding are the same as those of an assistant State Attorney General appointed to handle such a prosecution. A county has no right to establish a policy concerning how the district attorney should prosecute violations of law. *Baez, supra* at 77. As such, a district attorney's misconduct in prosecuting an individual cannot give rise to municipal liability.

The Defendant-Appellants recognized that in administrative capacities the

district attorney can be considered a municipal actor (*see*, *Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992); *see also*, *McMillian v. Monroe Cnty.,* 520 U.S. 781, 795, 117 S.Ct. 1734 (1997) "in some "managerial" situations it is, accordingly, appropriate to treat district attorneys as municipal policymakers"); the inquiry is dependent on an analysis of state law, and the understanding of the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official's functions under relevant state law. *McMillian*, at 786.

When determining if a District Attorney acts in a State capacity, and therefore is not a municipal actor, the focus of the inquiry is on whether the conduct is associated with the basic prosecutorial duties, including decisions on when and how to prosecute. It is only when a prosecutor acts in the administrative or managerial capacity recognized in *Walker*, that a District will be considered a municipal actor.

The case at bar does not deal with such an administrative *municipal* policy or custom. The plaintiffs here alleged prosecutorial misconduct resulting from an alleged decision by the District Attorney and his assistant to wrongly prosecute the plaintiffs, and the conduct engaged in while developing this purported wrongful prosecution (including the alleged fabrication of evidence). None of this conduct can be said to fall within the "administrative" or "managerial" acts by which the

District Attorney could be considered a municipal actor, and as such the County cannot be liable.

## *Alleged Conduct Not Caused by a Municipal Policy*

Even assuming the County could be liable for the conduct of the District Attorney in investigating and presenting a case to the grand jury, a plaintiff must demonstrate that the deprivation of the plaintiff's rights under federal law was caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven,* 691 F.3d 72, 80 (2d Cir.2012); *see also Connick v. Thompson,* 563 U.S. 51 (2011). To prevail against a municipality a plaintiff must show that the policymaking official (in this case the District Attorney) was aware of the employee's unconstitutional actions and consciously chose to ignore them." *Jones*, *supra.* To establish such deliberate indifference, "a plaintiff must show that a policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights." *Id.* "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* (quotations and citation omitted). The County respectfully submits there is no evidence in the available record to establish that District Attorney was deliberately indifferent to the risk of a

constitutional injury or made a decision not to train certain employees about their legal duty to avoid violating citizens' rights. *Connick,* 131 S.Ct. at 1359.

Nor can the plaintiffs establish that the alleged actions by the individual defendants establish the existence of a municipal policy. A single incident of misconduct that involves only actors below the policymaking level is, as a matter of law, insufficient to establish the existence of a policy. *See Ricciuti v. NYC Transit Authority,* 941 F.2d 119, at 123. The only conduct by an individual County defendant that survived the defendants 12(b)(6) motion was that attributable to defendant Lato, who is not a policy maker, and there are no allegations that the District Attorney was personally involved in the investigative conduct for which this Court denied absolute immunity to Lato. (See Brief for Defendant-Appellant Spota). To the extent that the Plaintiffs-Appellants claim *Monell* liability based on a failure of the District Attorney to properly supervise or train ADA Lato, it similarly must fail. *See Ricciuti,* 941 F.2d at 123; *see also City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197 (1989) (a mere failure to supervise employees or to provide proper training is not actionable unless the failure is so severe as to constitute "deliberate indifference" to the rights of persons such as plaintiff).

The deliberate indifference standard enunciated by the Supreme Court in *City of Canton* was analyzed by the Second Circuit in *Walker* and the court

discerned three requirements that must be met before a municipality's failure to train or supervise constitutes deliberate indifference to the constitutional rights of citizens. First, the plaintiff must show that a policymaker knows "to a moral certainty" that her employees will confront a given situation. *Walker* at 297. Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation. *Id*. Third, the plaintiff must show that the wrong choice by the employee will frequently cause a deprivation of a citizen's constitutional rights. *Id*. At 298.

It is in relation to the second requirement that the *Walker* court determined there is no obligation on the part of the District Attorney to train for those things that are obvious to all; and it is the contention of the County defendant that the plaintiffs have failed to meet this requirement. None the less, the plaintiffs have also failed to meet the first requirement of the *Walker* test. In discussing this first requirement, that the plaintiff must show that a policymaker knows "to a moral certainty" that her employees will confront a given situation, the court specifically noted that based on this standard, a policymaker "does not exhibit deliberate indifference by failing to train employees for *rare or unforeseen events*". *Walker* at 297 (emphasis added). In the instant matter, the plaintiffs must concede that the facts and circumstances surrounding this criminal prosecution are wholly

unique in scope. Indeed, the resolution of this matter through a granting of a writ of prohibition by the Appellate Division, in and of itself demonstrate its rarity. To suggest that the County (or the District Attorney) knew or even could have known to a "moral certainty" that an individual Assistant District Attorney would confront such an unforeseeable situation is implausible.

Even if one were to view the "given situation" more broadly, not as the prosecution of the plaintiffs itself, but rather that ADAs may on occasion seek to fabricate evidence or withhold exculpatory material, it still cannot be said that the County (through the District Attorney) knew (or should have known) to a moral certainty that such a situation would arise. It cannot be overlooked that the individual that the plaintiffs allege should have received greater training (ADA Lato) is an attorney admitted to the bar with a sworn obligation to avoid such conduct. Clearly, it would not be unreasonable for the District Attorney under such circumstances to expect that an experienced attorney who has an ethical and legal obligation to avoid relying upon false testimony would avoid engaging in that very conduct. More importantly, the plaintiffs have not plead, nor do they have proof that the County (or the District Attorney) knew to a moral certainty that ADA Lato would abandon his oath and sworn duty solely for the purpose of knowingly violating the civil rights of individuals.

Assuming *arguendo* that the plaintiffs can meet the first requirement of the *Walker* test, that the District Attorney knew that ADA Lato might be confronted with a situation where he would choose to fabricate evidence, the plaintiff cannot meet the second requirement. In such an instance and when faced with such a situation, the proper course of conduct to take (***not*** to use known false testimony and fabricate evidence) is so obvious to all without training or supervision, that the failure to train or supervise will not be "so likely" to produce a wrong decision as to support an inference of deliberate indifference by the County to the need to train or supervise. *See*, *Walker* at 300.

Lastly, while there is a narrowly drafted exception in the *Walker* decision wherein the court recognized that a claim might survive if there was a history of conduct requiring training for those things that were otherwise so obvious as to obviate the need for training, the plaintiffs cannot show a pattern of similar constitutional violations by untrained employees, or of deficiencies in the management of the District Attorney's Office, sufficient to demonstrate deliberate indifference for purposes of maintaining a *Monell* claim against the County. *Walker* at 300; *Cash v. County of Erie,* 654 F.3d 324, 333 (2d Cir.2011), *cert. denied,* 565 U.S. 1259, 132 S.Ct. 1741, 182 L.Ed.2d 528 (2012).

The Plaintiffs-Appellants in the instant matter simply cannot establish any long and persistent history of feckless training and discipline practices by District

Attorney Spota that would give rise to municipal liability. Nor can they produce any admissible evidence of widespread or persistent unlawful practices by his subordinates which would require him to address such conduct through some form of training or discipline. Instead, the plaintiffs rely upon unsupported inadmissible hearsay found in newspaper articles that amount to nothing more than tabloid rumor and conjecture. *See, Major League Baseball Props. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008).

In similar fashion, they cite to unfounded allegations against unnamed individuals in collateral submissions by federal prosecutors in the subsequent criminal prosecution of Defendant-Appellant Spota; or to claims made by persons that have agendas contrary to those of Mr. Spota. (*U.S. v. Walsh*). Lastly, it should be noted, that the sole case cited by the Plaintiffs-Appellants of supposed "wrongful" conduct by Defendant-Appellant Lato (*Kanciper v. Lato*) was dismissed on summary judgment in a decision that was subsequently affirmed by this Court. *Kanciper v. Lato*, No. 13CV0871SJFSIL, 2016 WL 11507274, at *1 (E.D.N.Y. Dec. 1, 2016), aff'd, 718 F. App'x 24 (2d Cir. 2017). As noted by the Court below, "allegations of such misconduct from newspapers and other judicial proceedings are not a substitute for evidence and, in any event, plaintiffs have failed to articulate how any such alleged misconduct in other cases pertained to the alleged constitutional violations in this case, which clearly hinge upon the decision

to prosecute itself (rather than deficiencies in management of the DA's Office)." (SPA 53 at fn. 36). This includes the prosecution of Mr. Spota, which was wholly unrelated to decisions to prosecute.

To the extent that the Plaintiffs-Appellants argue that Defendant-Appellant Spota was a policy maker and therefore the municipality could be liable for the alleged unconstitutional acts he committed in an individual capacity, all the acts alleged were associated with his duty as a prosecutor and were related to the core decision of when and how to prosecute. As such, even if considered a policy-maker, in that capacity he would proceeding as a State actor, and there can be no *Monell* liability against the municipal County of Suffolk. *Baez v. Hennessy,* 853 F.2d 73, 77 (2d Cir.1988). See also, *Van de Kamp v. Goldstein,* 555 U.S. 335, 129 S.Ct. 855, 172 L.Ed.2d 706 (2009) (regardless of the level of misconduct, when engaging in prosecutorial acts, including those done in the investigative stage of a case, a District Attorney is a State, not a municipal actor).

## *Causation*

Finally, a municipality may only be liable "where its policies are the moving force behind the constitutional violation." *Connick,* 563 U.S. at 61, 131 S.Ct. 1350 (internal quotation marks omitted). Therefore, "the plaintiff must show a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Hernandez v. United States,* 939 F.3d 191, 206–07 (2d Cir.

2019)(citing *Connick*); *see also Nicholson v. Scoppetta*, 344 F.3d 154, 165 (2d Cir. 2003) (explaining that plaintiff must show that municipality is actually responsible for her injury). Again, the Plaintiffs-Appellants cannot establish that the purported violation of their constitutional rights was the direct result of a claimed failure to train, nor can they established an affirmative link between the claimed failure and the alleged conduct of the Defendants-Appellees. Accordingly, there can be no *Monell* claim against the County and the decision of the District Court should be affirmed.

## <u>CONCLUSION</u>

The Defendants-Appellees Lato and the County of Suffolk, respectfully

submit that the judgment of the District Court granting their motion for summary

judgment should be affirmed in all respects.

Dated: Hauppauge, New York
August 13, 2020

> DENNIS M. COHEN
> SUFFOLK COUNTY ATTORNEY
> Attorney for Defendants-Appellees
> H. Lee Dennison Building
> 100 Veterans Memorial Hwy
> PO Box 6100
> Hauppauge, New York 11788
> (631) 853-4049

By:  /s/ Brian C. Mitchell
Brian C. Mitchell
Assistant County Attorney

# CERTIFICATE OF COMPLIANCE

This brief is in compliance with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) in that it contains 10,228 words excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

/s/ Brian C. Mitchell
Brian C. Mitchell
Assistant County Attorney