# 19-3949

In the
# United States Court of Appeals
## For the Second Circuit



JULIET ANILAO, HARRIET AVILA, MARK DELA CRUZ, CLAUDINE
GAMAIO, ELMER JACINTO, JENNIFER LAMPA, RIZZA MAULION,
THERESA RAMOS, RANIER SICHON and JAMES MILLENA,

*Plaintiffs-Counter-Defendants-Appellants,*

- and -

FELIX Q. VINLUAN,

*Plaintiff-Appellant,*

- v. -

THOMAS J. SPOTA, III, Individually and as District Attorney of Suffolk County,
OFFICE OF THE DISTRICT ATTORNEY OF SUFFOLK COUNTY,
LEONARD LATO, as an Assistant District Attorney of Suffolk County,
COUNTY OF SUFFOLK, SUSAN O'CONNOR, NANCY FITZGERALD,
and KARLA LATO, as Administrator of the Estate of Leonard Lato,

*Defendants-Appellees,*

*(See inside cover for continuation of caption)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLEE
## THOMAS J. SPOTA, III

STEPHEN L. O'BRIEN (SLO # 3153)
O'BRIEN & O'BRIEN, LLP
*Attorneys for Defendant-Appellee*
*Thomas J. Spota, III*
168 Smithtown Boulevard
Nesconset, New York 11767
Ph.: (631) 265-6660
Fax: (631) 265-3991

APPELLATE INNOVATIONS
(914) 948-2240

14597

_____

- and -

SENTOSA CARE, LLC, AVALON GARDENS REHABILITATION
AND HEALTH CARE CENTER, PROMPT NURSING EMPLOYMENT
AGENCY, LLC, FRANCRIS LUYUN, BENT PHILIPSON
and BERISH RUBINSTEIN,

*Defendants-Counter-Claimants.*

_____

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

JURISDICTIONAL STATEMENT ....................................................... 1

STATEMENT OF ISSUES FOR REVIEW ............................................ 2

STATEMENT OF THE CASE ............................................................. 3

  A. Procedural History ..................................................................... 3

  B. Statement Of Facts ...................................................................... 5

SUMMARY OF THE ARGUMENT .................................................... 12

ARGUMENT ..................................................................................... 15

I.      THE DISTRICT COURT CORRECTLY FOUND THAT SPOTA WAS
ENTITLED TO ABSOLUTE IMMUNITY FROM SUIT ON ALL CLAIMS
AGAINST HIM ARISING OUT OF THE INITIATION OF PROSECUTION
AND PRESENTATION OF EVIDENCE BEFORE THE GRAND JURY
NOTWITHSTANDING ISSUANCE OF THE WRIT OF PROHIBITION BY
THE STATE APPELLATE COURT ..................................................... 15

  A. Standard Of Review ................................................................... 15

  B. Points And Authorities .............................................................. 16

      1. Fields v. Wharrie Does Not Counsel for Modification of the
      Doctrine of Absolute Immunity .................................................. 17

      2. Application of the Doctrine of Absolute Immunity Did Not Deprive
      Appellants of an Opportunity to Litigate Their Claims of Fabrication of
      Evidence Against Spota, Lato, and the DA's Office ....................... 22

i

3.   Spota, Lato, and the DA's Office Did Not Act Without Jurisdiction in Conducting the Grand Jury Investigation of Appellants and in Pursuing the Indictment ............................................................................................ 23

II.   THE DISTRICT COURT CORRECTLY FOUND THAT APPELLANTS FAILED TO RAISE A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER SPOTA DIRECTLY PARTICIPATED IN THE ALLEGED FABRICATION OF EVIDENCE OR ANY OTHER UNCONSTITUTIONAL ACT DURING THE INVESTIGATIVE PHASE………...……………………... 25

A.   Standard Of Review ........................................................................ 28

B.   Points And Authorities .................................................................... 29

III.   THE DISTRICT COURT CORRECTLY FOUND THAT SPOTA WAS ENTITLED TO SUMMARY JUDGMENT BECAUSE APPELLANTS FAILED TO POINT TO EVIDENCE FROM WHICH A JURY COULD INFER THAT SPOTA'S CONDUCT DURING THE INVESTIGATIVE PHASE VIOLATED APPELLANTS' CONSTITUTIONAL RIGHTS…………………………………35

A.   Standard Of Review ........................................................................ 35

B.   Points And Authorities .................................................................... 36

CONCLUSION ............................................................................................ 42

CERTIFICATE OF COMPLIANCE ........................................................... 43

CERTIFICATE OF SERVICE ..................................................................... 44

# TABLE OF AUTHORITIES

**Cases**                                                                     **Page**

*Alvarez v. Haley*, No. 10–cv–4263 (PAM/JJG), 2011 WL 825694, at *2 (D. Minn. Feb. 9, 2011) ), *rep. & rec. adopted*, 2011 WL 839391 (D. Minn. Mar. 7, 2011) ...............................................................................27

*Anilao v. Spota* ("*Anilao I*"), 774 F. Supp. 2d 457 (E.D.N.Y. 2011) ...................................................................... 4, 20, 23, 25, 27, 37

*Anilao v. Spota* ("*Anilao II*"), 340 F. Supp. 3d 224 (E.D.N.Y. 2018) ................................................................ 4, 20, 24, 30, 37, 40

*Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004) .......................................................................................29

*Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987).......................................... 24, 26

*Bernard v. Cty. of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004) .................................24

*Buckley v. Fitzsimmons*, 509 U.S. 259, 275–276 (1993)................................... 18, 19

*City of Providence, Rhode Island v. Bats Glob. Markets, Inc.*, 878 F.3d 36, 46 (2d Cir. 2017), *cert. denied*, 139 S. Ct. 341 (2018) ........................................15

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)...............................................30

*D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir.1998) ............................29

*Fields v. Wharrie*, 740 F.3d 1107 (7th Cir. 2014) ............................... 17, 18, 19, 21

*Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 428 (2d Cir.2001) ................... 29, 31

*Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012)............................................16

*Hartman v. Moore*, 547 U.S. 250, 261–62 (2006).................................................27

*Hill v. City of New York*, 45 F.3d 653 (2d Cir. 1995)..............................................41

*Holtzman v. Goldman*, 71 N.Y.2d 564, 569, 523 N.E.2d 297, 300 (1988) ...... 25, 35

# TABLE OF CONTENTS (CONT'D)

**Page**

*Imbler v. Pachtman*, 424 U.S. 409, 431 n.33 (1976)........................................ 16, 24

*Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005)........................ 29, 30

*Johnson v. Goord*, 445 F.3d 532, 534 (2d Cir. 2006)..............................................28

*Kanciper v. Lato*, No. 13-CV-0871 (SJF) (SIL), 2016 WL 11507274 (E.D.N.Y. Dec. 1, 2016), and this Court affirmed, 718 F. App'x 24 (2d Cir. 2017) .............34

*La Rocca v. Lane*, 37 N.Y.2d 575, 578–579, 376 N.Y.S.2d 93, 338 N.E.2d 606 (1975), *cert. denied*, 424 U.S. 968 (1976)..........................................................26

*Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019)......................................28

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)................................................................................29

*Matter of Vinluan v. Doyle*, 60 A.D.3d 237, 873 N.Y.S.2d 72 (2009), as amended (July 21, 2009) ............................................................. 12, 25, 26, 35

*McCarthy v. S.E.C.*, 406 F.3d 179, 186 (2d Cir. 2005) ..........................................38

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)...............29

*Nivens v. Gilchrist*, 444 F.3d 237, 250 (4th Cir. 2006) ..........................................27

*Pearson v. Callahan*, 555 U.S. 223, 236 (2009)......................................................36

*People v. Kanciper*, 100 A.D.3d 778, 779, 954 N.Y.S.2d 146, 147 (2d Dep't 2012) ...................................................................................... 33, 34

*Saucier v. Katz*, 533 U.S. 194, 201 (2001) ...................................................... 36, 37

*Schenck v. United States*, 249 U.S. 47, 52 (1919) ...................................................11

*Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005) ............................25

# TABLE OF CONTENTS (CONT'D)

**Page**

*Sloley v. VanBramer*, 945 F.3d 30, 36 (2d Cir. 2019) ...............................................35

*Stump v. Sparkman*, 435 U.S. 349, 356 (1978)................................................. 24, 25

*Thomas v. County of Hawaii*, No. Civ. 07–00251 (JMS/LEK), 2008 WL 4483792, at *5–6 (D. Hawai'i Oct. 1, 2008)......................................................27

*Tolan v. Cotton*, 572 U.S. 650, 656–657 (2014).................................................. 36, 37

*Trustees of Upstate New York Engineers Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2279 (2017)....................15

*United States v. Black*, 918 F.3d 243, 256 (2d Cir. 2019) .......................................38

*United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000)......................................31

*United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir.1997) .................................31

*United States v. Quiroz*, 22 F.3d 489, 490-91 (2d Cir. 1994).................................38

*United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994) .........................................28

*VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 118 (2d Cir. 2001)...............28

*Walker v. Clearfield Cty. Dist. Attorney*, 413 F. App'x 481(3d Cir. 2011)...... 21, 27

*Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000).......................................................21

## Statutes

28 U.S.C. § 1291 ..........................................................................................................2

28 U.S.C. § 1331 ..........................................................................................................1

28 U.S.C. § 1343 ..........................................................................................................1

# TABLE OF CONTENTS (CONT'D)

**Page**

28 U.S.C. § 1367 ...................................................................................1

42 U.S.C. § 1983 ................................................... 1, 3, 16, 24, 29

N.Y. Penal Law § 100.00 .................................................... 10, 26

N.Y. Penal Law § 105.00 .................................................... 10, 26

N.Y. Penal Law § 260.10 .................................................... 10, 26

N.Y. Penal Law § 260.25 .................................................... 10, 26

N.Y Penal Law § 260.32 ...................................................26

N.Y Penal Law § 260.34 ...................................................26

## Other Authorities

Fed. R. Evid. 404 ...........................................................31

Fed. R. Civ. P. 56 ...........................................................29

# JURISDICTIONAL STATEMENT

This is a civil rights action arising out of the criminal prosecution of Juliet Anilao, Harriet Avila, Mark Dela-Cruz, Claudine Gamaio, Elmer Jacinto, Jennifer Lampe, Rizza Maulion, Theresa Ramos, Ranier Sichon, and James Millena (collectively "Nurses" or "Appellant-Nurses") for leaving their private-sector jobs and the criminal prosecution of their attorney, Felix Q. Vinluan ("Appellant-Attorney" or "Vinluan"), for advising them regarding the decision to leave their jobs and brought pursuant to 42 U.S.C. § 1983 and the common law of the State of New York. (A140–174.)[1] The district court had original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

On March 31, 2011, the district court dismissed certain claims against Thomas J. Spota III, individually and as District Attorney of Suffolk; the Office of the District Attorney of Suffolk County ("DA's Office"); Leonard Lato, individually and as an Assistant District Attorney of Suffolk County; and the County of Suffolk (collectively "County-Appellees") based on absolute immunity. (SPA1–52.)[2] By order of November 28, 2018, the district court granted summary judgment in favor of the Government-Appellees on all remaining claims against them and in favor of

---

[1] "A" followed by a number refers to a page in the Appendix.
[2] "SPA" followed by a number refers to a page in the Special Appendix.

1

the Appellant-Nurses's employers, Sentosa Care, LLC, Avalon Gardens Rehabilitation and Health Care Center, Prompt Nursing Employment Agency, LLC, Francris Luyun, Bent Philipson, Berish Rubinstein, Susan O'Connor, and Nancy Fitzgerald (collectively the "Sentosa-Defendants"), on the section 1983 claims, but allowed the remaining claims against the Sentosa-Defendants to go forward. (SPA53–89.)

On October 25, 2019, settlement between all Appellants and the Sentosa-Defendants was placed on the record, and an electronic order dismissing the case was entered on October 28, 2019. A stipulation of dismissal of the Sentosa-Defendants was entered on November 22, 2019. (A32.) On November 25, 2019, Appellants filed a notice of appeal of the district court's March 31, 2011 order dismissing certain claims against the County-Appellees and the November 28, 2018 order granting summary judgment on the remaining claims against the County-Appellees. (SPA90–91.) Appellants filed a corrected notice of appeal on November 26, 2019. (SPA92–93.) This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES FOR REVIEW

1.    Did the district court correctly find that the doctrine of absolute immunity shielded Appellee Thomas J. Spota, III ("Spota"), from suit on all claims arising

from initiation of prosecution and presentation of evidence to the grand jury, even though a state appellate court issued a writ of prohibition barring the prosecution from going forward on the ground that the proposed prosecution violated the First and Thirteenth Amendments to the U.S. Constitution?

2.    Did the district court correctly find that Appellants failed to point to a genuine issue of material fact as to whether Spota directly participated in the alleged fabrication of evidence or any other unconstitutional act during the investigative phase of the prosecution of Appellants?

3.    Did the district court correctly find that Spota was entitled to summary judgment because Appellants failed to point to evidence from which a jury could infer that Spota's conduct during the investigative phase violated Appellants' constitutional rights?

## STATEMENT OF THE CASE

### A. Procedural History

On January 6, 2010, the Nurses and their attorney, Vinluan, commenced this action by filing a complaint against the County-Appellees and the Sentosa-Defendants alleging claims under 42 U.S.C. § 1983, as well as common-law claims of false arrest and malicious prosecution. (A12.) The County-Appellees moved to dismiss the complaint on March 23, 2010 on the grounds that the complaint was

barred by the doctrine of absolute immunity and it otherwise failed to state a claim for which relief could be granted. (A33–39.) Appellants filed an amended complaint on July 29, 2010. (A140–174.) On March 31, 2011, the district court, the Honorable Joseph F. Bianco presiding, granted the motion to dismiss, in part, dismissing the claims against the County-Appellees arising from the initiation of prosecution and presentation of evidence based on absolute immunity and allowing claims related to the investigation of criminal charges against the Appellants to go forward. (SPA1–52; *Anilao v. Spota* ("*Anilao I*"), 774 F. Supp. 2d 457 (E.D.N.Y. 2011).)

The County-Appellees answered the amended complaint on April 14, 2011 (A251–259), and on April 22, 2011, Spota retained counsel separate from the attorney representing the Office of the District Attorney of Suffolk County, Lato, and the County of Suffolk (A16). Upon the completion of discovery, the County-Appellees and Spota filed separate motions for summary judgment on May 6, 2019 and May 9, 2019. (A260–271, A820–828.) On November 28, 2018, U.S. District Judge Bianco granted summary judgment in favor of the County-Appellees and Spota on all remaining claims against them (SPA53–89; *Anilao v. Spota* ("*Anilao II*"), 340 F. Supp. 3d 224 (E.D.N.Y. 2018)) on the grounds that there was "insufficient evidence in the record for a rational jury to reasonably infer that Lato and/or Spota conspired with the Sentosa defendants to fabricate evidence during the investigative phase." *Anilao*, 340 F. Supp. 3d at 251 (SPA73.) The district court

further concluded that because there was no constitutional violation, there was no municipal liability against Suffolk. *Id.* (SPA73.)

The claims against the Sentosa-Defendants were ultimately settled on October 28, 2019, and a stipulation of dismissal of those defendants was entered on the record on November 22, 2019. (A32.) Appellants filed a notice of appeal of the district court's March 31, 2011 order dismissing certain claims against the County-Appellees and the November 28, 2018 order granting summary judgment on the remaining claims against the County-Appellees on November 25, 2019 (A1697) and a corrected notice of appeal on November 26, 2019 (A1699).

## B.       Statement Of Facts

The Appellant-Nurses are Phillipines-trained medical personnel who were recruited to work as nurses in the United States by Francris Luyun on behalf of Sentosa Care, LLC, a New York business located in Nassau County. (A142, 144–145.) Upon their arrival in the United States, the Nurses were employed by Prompt Nursing Employment Agency, LLC, another New York business located in Nassau County, and assigned to work in the pediatric ventilator unit at Avalon Gardens Rehabilitation and Health Care Center, a skilled nursing facility licensed in New York. (A142–143, 148.) Luyun and Berish Rubinstein were principals of Prompt. Bent Philipson was a principal of Sentosa, Prompt, and Avalon Gardens. (A143.)

Following the perceived failure of the Sentosa-Defendants to address complaints about employment conditions, the Nurses consulted Appellant-Attorney Vinluan, who advised them that if they chose to resign they would not be liable for the $25,000 penalties set forth in their employment contracts. (A1187–1188, 1194–1195.) The Appellant-Nurses resigned their positions at the same time just prior to the beginning of their shifts[3] on April 7, 2006 by submitting identical written letters of resignation addressed to Philipson. (A146–149, 760–769.) April 7, 2006 was the Friday immediately preceding Palm Sunday, which begins Holy Week leading up to Easter the following Sunday, and the first night of Passover on Monday, April 10, 2006. (Dist. Ct. Dkt. Entry #116-4 [Sentosa-Defs.' Mot. for Sum. Jdgmt., Ex. A, O'Connor Dep.], 108–109.) Other Filipino nurses recruited by Sentosa and employed by Prompt in other nursing facilities also resigned their positions. (A149.) The Nurses discussed whether their simultaneous resignations would impair Avalon's ability to care for the pediatric patients and were concerned that Avalon would not be able to get adequate coverage for their shifts because the needs of the pediatric patients were so great. (A352–353, 360.) The children required 24-hour care (A266, ¶ 3; A1617, ¶ 3), and there was a minimum staffing requirement of four nurses for the two pediatric units (A1601). The inherent risk posed to the children

---

[3] One of the Nurses submitted her resignation letter while on duty, but she remained on-duty after the scheduled end of her shift so that a replacement could be found. (A 1617, ¶ 56; Dist. Ct. Dkt. Entry #116-4, Ex. A, 92–94.)

by the mass resignations combined with the timing of the resignations just prior to two significant holidays created a sense of urgency in the Sentosa Defendants for a couple of weeks, particularly since any replacement nurses would have to be trained by existing staff in the special care for the children. (Dist. Ct. Dkt. Entry #116-4, Ex. A, 186–189.) While no patient was harmed by the mass resignations, the sudden loss of training nursing staff created a real potential for harm to the patients. (A371.)

In response to the resignations, on April 10, 2006, Susan O'Connor, Administrator at Avalon Gardens (A143), wrote a letter to the New York State Department of Education asking the agency to investigate whether the Nurses engaged in unprofessional conduct by resigning without reasonable notice. (A1162–1165.) The Department investigated the complaint and some months later closed the file without the initiation of disciplinary action. (A1280.) On April 26, 2016, O'Connor and Howard Fensterman, attorney for the Sentosa-Defendants, filed a complaint with the Suffolk County Police Department in order to document that 10 nurses and one P.T. had walked out of work without notice and had never returned. (A362–365, 373.) No action was taken on the complaint, because the police thought it was a matter that should be investigated by the District Attorney's Office. (A1316, 1347–1348.)

On May 31, 2006, at Fensterman's request, Spota and investigators Walter Warkenthien and Richard Burke of the District Attorney's ("DA's") Office met with

Fensterman and O'Connor and other representatives of the Sentosa Defendants concerning the Nurses' resignations for about 45 minutes. (A1245, 1341–1342, 1359; Dist. Ct. Dkt. Entry #116-10 [Sentosa-Defs.' Mot. for Sum. Jdgmt., Ex. G, Spota Dep.], 47.) It was Spota's understanding following the meeting that although no children had been harmed following the Nurses' mass resignations, the risk of serious harm was considerable, given the fact that the children were on ventilators and needed periodic suctioning by specially trained nursing staff. Spota recalled that O'Connor, in particular, was very emotional in describing the danger the children faced when the Nurses walked off the job. (Dist. Ct. Dkt. Entry #116-10, Ex. G, 58.) Nonetheless, Spota determined that the DA's Office would take no action until the State Department of Education had concluded its investigation. (A1348.) Those present at the meeting did not discuss a course of action, and no further meetings were planned. (Dist. Ct. Dkt. Entry #116-10, Ex. G, 59–60.) A few months later, Spota assigned the matter to Lato to investigate. (Dist. Ct. Dkt. Entry #116-10, Ex. G, 60–61, 64.) Subsequently, Spota introduced Lato to Fensterman, but Lato admitted to not paying much attention to what Mr. Fensterman said at the lunch meeting, as Fensterman and Spota spoke together, while Lato spoke with the two investigators who joined them. (A1366, 1369–1370; Dist. Ct. Dkt. Entry #116-10, Ex. G, 60–61, 67–68.) Spota told Fensterman that the District Attorney's Office would be fair in its investigation. (Dist. Ct. Dkt. Entry #116-10, Ex. G, 69.) Spota

never met with Fensterman after the lunch meeting. (Dist. Ct. Dkt. Entry #116-10, Ex. G, 70; Dist. Ct. Dkt. Entry #116-12, Ex. I [Lato. Dep.], 82.) The only other time Lato met Fensterman was to pay a shiva call following the death of Fensterman's father. (Dist. Ct. Dkt. Entry #116-12, Ex. I, 82–83.)

As part of the investigation, Lato visited Avalon with investigators twice. (Dist. Ct. Dkt. Entry #116-4, Ex. A (O'Connor Dep.], 124–126.) He and investigators from the District Attorney's Office also interviewed several of the Appellants. (A1372, 1384.)

After a six-month investigation (Dist. Ct. Dkt. Entry #116-10, Ex. G, 71) in which Spota took no part, Lato presented evidence to the grand jury between January 30, 2007 and March 6, 2007. (A374–749.) All Appellants were given notice that they were targets of the grand jury proceedings and that they could testify if they so desired. (A267–268, 750–759, 774–778, 786–787, 789–791, 794–794, 796–798, 800–802, 804–808,1595.) Lato spent, at most, a couple of minutes with witnesses who testified before the grand jury and did not discuss their testimony with them other than to tell them generally what he was going to ask. None of the witnesses were hostile and he was able to interview them in advance. (A369–370, 810–813, 1384–1386.)

On March 6, 2007, the grand jury returned a true bill of indictment against the Appellant-Nurses for endangering the welfare of a child, in violation of N.Y. Penal

Law § 260.10(1), endangering the welfare of a disabled person, in violation of N.Y. Penal Law § 260.25, and conspiracy in the sixth degree, in violation of N.Y. Penal Law § 105.00. On that same date, the grand jury also returned a true bill of indictment against Vinluan for criminal solicitation in the fifth degree, in violation of N.Y. Penal Law § 100.00. (A716–749.)

At some point, Spota became aware that the matter was being presented to a grand jury and later that the grand jury had returned an indictment. He did not review the grand jury minutes, and he was unaware of any testimony before the grand jury. (A1350, 1352.) Lato made very few reports to him, as was normal in a district attorney's office that has 55,000 to 60,000 cases per year, although sometimes Spota asked Lato about the case as they passed in the hallway. (A1349, 1351, 1365.)

The Appellant-Nurses moved to dismiss the indictment on the ground that prosecution of them violated the Thirteenth Amendment to the U.S. Constitution prohibiting slavery. The Appellant-Attorney filed a motion to dismiss the indictment against him on the ground that it violated his First Amendment right to free speech. After having reviewed the grand jury minutes (A1415, A1419), the Honorable Robert W. Doyle, Justice of the Suffolk County Supreme Court, denied both motions on September 28, 2007. (A1415–1420.) Addressing the Appellant-Nurses' Thirteenth Amendment argument, Justice Doyle stated:

> Under no view of the facts of this case could it be said that the People were seeking to compel defendants [*sic*] continued employment by any

particular entity.  Rather, the Grand Jury found sufficient evidence with which to conclude that these defendants should be charged with specific crimes for the actions taken by them, *en masse*, at a time when they were entrusted with the care of certain physically disable[d] children. There is absolutely no evidence to suggest that this prosecution in any way violates the rights of any of these defendants under the Thirteenth Amendment to the United States Constitution.

(A1416.)

Justice Doyle was equally dismissive of the Appellant-Attorney's claim that the indictment was barred by the First Amendment, referring to Mr. Justice Holmes's famous statement that "the character of every act depends upon the circumstances in which it is done. . . . [and t]he most stringent protection of free speech would not protect a man in falsely shouting fire in a theatre and causing a panic." *Schenck v. United States*, 249 U.S. 47, 52 (1919) (internal citation omitted) (A1419–1420), and concluding that "the actions of the defendants must be judged in light of the circumstances under which their actions were taken."  (A1420.)  Those actions included entering into an agreement between the Attorney and the Nurses under which the Nurses would engage in a "mass resignation from their critical roles as care givers to these disabled children, without sufficient advance notice or warning to their employer." (A1419.) Justice Doyle observed, "The fact that defendants may have had the further objective that their resignations would somehow enhance their bargaining positions in the labor dispute with their employer, [*sic*] does not absolve them from criminal liability for the consequences of their actions." (A1419.)

After Justice Doyle denied their motions to dismiss the indictment, Appellants applied to the New York Supreme Court, Appellate Division, Second Department, for a writ of prohibition. The Second Department granted the petition and on January 13, 2009 issued a writ of prohibition enjoining further prosecution of the Appellants on the grounds that prosecution violated the Nurses rights under the Thirteenth Amendment and Vinluan's rights under the First Amendment. *Matter of Vinluan v. Doyle*, 60 A.D.3d 237, 873 N.Y.S.2d 72 (2009), as amended (July 21, 2009).[4] Following dismissal of the indictments, Appellants commenced this suit against the County-Appellees and the Sentosa-Defendants.

## SUMMARY OF THE ARGUMENT

Appellants sought damages against Spota in his individual capacity for his alleged role in investigating Appellants and initiating their prosecution on charges arising out of the en masse resignations of Appellant-Nurses without notice and the act of Appellant-Attorney in advising them to take such action. The district court correctly applied the doctrine of absolute immunity in dismissing all claims against

---

[4]It does not appear from the decision in *Matter of Vinluan v. Doyle*, 60 A.D.3d 237, 873 N.Y.S.2d 72 (2009), as amended (July 21, 2009), that the Second Department was provided with or had access to the grand jury minutes on which Justice Doyle relied in denying the motions to dismiss the indictment.

Spota based on conduct related to the judicial phase of the criminal process, including presentation of the case to the grand jury. Notwithstanding Appellants' argument to the contrary, the district court unambiguously refrained from dismissing on absolute immunity grounds claims that Spota engaged in or oversaw an unconstitutional investigation separate and apart from the prosecutorial function and gave Appellants an opportunity to develop their theory of the case through extensive discovery.

The fact that the prosecution of Appellants was discontinued by a writ of prohibition issued by a state appellate court does not render the district court's application of the doctrine of absolute immunity invalid. Absolute immunity is a bar to a civil action for even acts undertaken in excess of jurisdiction, as long as the prosecutor did not act in the clear absence of all jurisdiction. In this case, it was within the authority of the Suffolk County District Attorney's Office to make a presentation to the grand jury and to obtain an indictment against Appellants on charges based on offenses designated by the New York Penal Code. The fact that the Second Department Appellate Division concluded that a prosecution in this instance would violate the First and Thirteenth Amendments to the U.S. Constitution did not abolish the authority of the DA's Office to prosecute offenses in violation of New York law. Appellants have failed to address well-established law cited by the district court holding that absolute immunity applies even when a prosecutor brings

a case in violation of a defendant's constitutional rights, as long as the prosecutor was acting in the role of an advocate.

Moreover, Appellants' allegations that the prosecution fabricated evidence and elicited testimony—which are unsupported by the extensive record in this case—does not remove the bar of absolute immunity. Such immunity applies regardless of any ill motive on the part of the prosecution.

Although Spota was the District Attorney at the time of Appellants' investigation and prosecution, the record is clear that he had no personal involvement in the investigation and prosecution of Appellants, which was undertaken by ADA Lato. Appellants have failed to raise a genuine issue of material fact as to Spota's direct involvement, and, thus, it was proper for the district court to find him not liable for any unconstitutional acts. The best Appellants can do is to offer rumors and opinions about allegedly other bad acts by Spota which are unrelated to the subject of this litigation.

Even if Spota were directly involved in the matters sued upon, there is no liability, because the district court found, in granting summary judgment on the claims arising out of the alleged investigative acts, that Appellants had not put forth sufficient evidence to raise a genuine issue of material fact as to whether there was a constitutional violation. There was none. Having failed to address that critical

finding in their Opening Brief, Appellants have waived a challenge to that determination and should be barred from raising it in a Reply Brief.

## ARGUMENT

I.     **THE DISTRICT COURT CORRECTLY FOUND THAT SPOTA WAS ENTITLED TO ABSOLUTE IMMUNITY FROM SUIT ON ALL CLAIMS AGAINST HIM ARISING OUT OF THE INITIATION OF PROSECUTION AND PRESENTATION OF EVIDENCE BEFORE THE GRAND JURY NOTWITHSTANDING ISSUANCE OF THE WRIT OF PROHIBITION BY THE STATE APPELLATE COURT**

A.     **Standard Of Review**

This Court "review[s] de novo the grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim, accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trustees of Upstate New York Engineers Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2279 (2017). This same de novo standard of review applies where, as here, the district court determines that prosecution of the complaint is barred by absolute immunity. *City of Providence, Rhode Island v. Bats Glob. Markets, Inc.*, 878 F.3d 36, 46 (2d Cir. 2017), *cert. denied*, 139 S. Ct. 341 (2018).

**B.** **Points And Authorities**

Appellants acknowledge the well-established law that prosecutors are absolutely immune from suit for money damages pursuant to 42 U.S.C. § 1983 based on conduct related to the judicial phase of the criminal process, *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012), including, as in this case, presentation of a case to the grand jury. *Imbler v. Pachtman*, 424 U.S. 409, 431 n.33 (1976)[5]. Nonetheless, citing criticisms of absolute immunity from sources ranging from the *Stanford Journal of Civil Rights* to the *Huffington Post*, Appellants ask this Court to carve out an exception to the absolute bar of prosecutorial immunity "where a prosecution is unconstitutional *ab initio* and where its unconstitutionality was evident or should have been evident to the prosecutor from the facts and the law and where the prosecution is based upon evidence deliberately fabricated by the prosecutors." (Appellants' Initial Brief, Dkt. Entry #91, p. 33.) In support of this requested

---

[5] The U.S. Supreme Court has

> recognize[d] that the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom. A prosecuting attorney is required constantly, in the course of his duty as such, to make decisions on a wide variety of sensitive issues. These include questions of whether to present a case to a grand jury, whether to file an information, whether and when to prosecute, whether to dismiss an indictment against particular defendants, which witnesses to call, and what other evidence to present.

*Imbler v. Pachtman*, 424 U.S. 409, 431 n.33 (1976).

departure from the rule of absolute immunity, Appellants point to the Seventh Circuit decision in *Fields v. Wharrie*, 740 F.3d 1107 (7th Cir. 2014). The court in *Fields* did not set forth a new construction of absolute immunity, and even if it did, the record in this case does not support Appellants' contention that Lato deliberately fabricated evidence in order to support criminal charges which were clearly unconstitutional.

### 1. Fields v. Wharrie Does Not Counsel for Modification of the Doctrine of Absolute Immunity

In *Fields*, Fields sued two prosecutors, Wharrie and Kelley, for coercing witnesses to give testimony which both the prosecutors and the witnesses knew to be false, resulting in his conviction for two murders and 17-year imprisonment until he was acquitted on retrial. 740 F.3d at 1109. One month prior to Fields's arrest in June 1985, Wharrie procured false statements from a witness that led to indictment and trial and eventual conviction. *Id.* at 1111–12. While Fields was awaiting retrial in 1998, both Wharrie and Kelley coerced false testimony against him. *Id.* at 1114, 1115.

The Seventh Circuit rejected Wharrie's theory that he was entitled to absolute immunity because Fields did not suffer actual injury until Wharrie presented the false evidence at trial in performance of his absolutely immune advocacy function,

*id.* at 1111, observing, "Wharrie is asking us to bless a breathtaking injustice. Prosecutor, acting pre-prosecution as an investigator, fabricates evidence and introduces the fabricated evidence at trial. The innocent victim of the fabrication is prosecuted and convicted and sent to prison for 17 years," *id.* at 1113. Clearly Wharrie was acting as an investigator, not a prosecutor, when he obtained the false testimony. Quoting the U.S. Supreme Court in *Buckley v. Fitzsimmons*, the court stated that giving Wharrie the shield of absolute immunity just because he later used the results of his investigation in prosecuting Fields

> doesn't jibe with the Supreme Court's decision in *Buckley*, where we read that "the [fact that] prosecutors later called a grand jury to consider the evidence this work produced does not retroactively transform that work from the administrative into the prosecutorial. A prosecutor may not shield his investigative work with the aegis of absolute immunity merely because, after a suspect is eventually arrested, indicted, and tried, that work may be retrospectively described as 'preparation' for a possible trial; *every prosecutor might then shield himself from liability for any constitutional wrong against innocent citizens by ensuring that they go to trial.*"

*Id.* at 1113–14 (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 275–276 (1993) (emphasis added by *Fields*). Moreover, Wharrie was not entitled to qualified immunity for his investigatory acts "[f]or it was established law by 1985 (indeed long before), when the fabrication is alleged to have occurred, that a government lawyer's fabricating evidence against a criminal defendant was a violation of due process." *Id.* at 1114 (citing cases).

However, a different result held for procurement of false testimony in preparation for retrial, since "[o]nce prosecution begins, bifurcating a prosecutor's role between investigation and prosecution is no longer feasible." *Id.* at 1115. The district court held—and Fields did not appeal the holding—that Wharrie was entitled to absolute immunity for procuring false testimony in preparation for the retrial in 1998. The Seventh Circuit found that the district court's holding was consistent with the appellate court's analysis and remanded the case for reconsideration by the district court of its decision denying Kelley's motion to dismiss based on absolute immunity. *Id.* at 1115–16.

While *Fields* presented a clever argument by one of the defendant prosecutors that a prosecutor is absolutely immune from suit for investigatory acts if the fruits of the investigation are later used in the prosecution, as demonstrated by its reference to the above-quoted language from the Supreme Court's decision in *Buckley v. Fitzsimmons*, the Seventh Circuit rejected that argument and applied well-settled law that prosecutors are entitled to absolute immunity for prosecutorial functions, but they are only entitled to qualified immunity when they act as investigators outside the context of a prosecution. This is the same law the district court applied to this case when Judge Bianco granted Spota's and Lato's claim of absolute immunity for preparation and presentation to the grand jury, but refused to grant absolute immunity for the allegation of a highly unusual investigation apart from the grand

jury proceedings. "[R]eading the Amended Complaint as a whole, [the district court found that Appellants] have alleged that the prosecutors orchestrated the investigation of [Appellants] after the police declined to get involved, and reached an agreement with the Sentosa defendants to manufacture testimony from the Sentosa defendants that the County defendants knew to be false." (SPA21; *Anilao I*, 774 F. Supp. 2d at 484.) These allegations clearly constituted "investigatory conduct" for which there is no absolute immunity. (SPA22; *Anilao I*, 774 F. Supp. 2d at 484.) The district court denied the motion to dismiss the investigatory conduct claims, explaining,

> the individual County defendants are not entitled to absolute immunity for alleged misconduct during the investigation of plaintiffs, and the Court cannot determine at the motion to dismiss stage, given the allegations in the Amended Complaint, whether the individual County defendants are entitled to qualified immunity for their actions in the investigation phase[.]

(SPA51; *Anilao I*, 774 F. Supp. 2d at 513.)[6] Therefore, Appellants' assertion in their Opening Brief that "the District Court dismissed all causes of action against Lato, Spota and Suffolk County, granting them absolute and qualified immunity" (Docket Entry #91 at 3) is simply false and not supported by the record in this case.[7]

---

[6] At the summary judgment stage, the district court confirmed "that Lato and Spota are not entitled to absolute immunity for the investigative stage." (SPA72, *Anilao v. Spota* (*Anilao II*), 340 F. Supp. 3d 224, 249 (E.D.N.Y. 2018).)

[7] In fact, Appellants admit 25 pages later that the district court granted the motion to dismiss insofar as Appellants' claims concerned Spota's and Lato's roles "as

In concluding that the complaint alleged investigatory acts by Spota, Lato, and the DA's Office for which absolute immunity did not apply, Judge Bianco relied, in part, on *Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000) (affirming decision denying motion to dismiss complaint on qualified immunity grounds), a case from this Court in which, just as in *Fields*, a prosecutor allegedly procured false evidence in the investigatory stage and used it against the civil rights plaintiff in the subsequent prosecution. The *Fields* decision cites to *Zahrey* in support of the proposition that a prosecutor's investigative work is not shielded by absolute immunity simply because its fruits are presented in a later prosecution. *See Fields*, 740 F.3d at 1114. In fact, Appellants include an extensive passage citing to *Zahrey*, among other cases, in their Opening Brief. (Docket Entry #91 at 32.) Accordingly, this appeal is *not* a case of first impression, as Appellants assert in their Opening Brief.[8] (Docket Entry #91 at

---

advocates in [the] presentation of evidence to the grand jury and after the indictment, but denied the motion in part, finding that they would only be qualifiedly immune for any violation of Appellants' civil rights occurring during the investigative phase of Appellees' roles." (Docket Entry #91 at 28.) Appellants also admit that the district court granted summary judgment on the claims arising out of the investigative activities on the ground that Spota and Lato were entitled to qualified immunity, and there was no evidence of a violation of Appellants' civil rights. (*Id.*)

[8] For another appellate case in which the plaintiff alleged that the prosecutor intentionally manufactured false witness testimony against him and used that testimony as the basis for criminal charges and in which the court found that the prosecutor was entitled to absolute immunity for the decision to prosecute but only to qualified immunity for manufacturing evidence as part of a pre-indictment investigation, *see Walker v. Clearfield Cty. Dist. Attorney*, 413 F. App'x 481 (3d Cir. 2011).

2.)  That the *Zahrey* decision by this Court was 14 years old at the time the Seventh Circuit issued its *Fields* decision is further evidence that the Seventh Circuit did not create new law with that case.

Even if the *Fields* decision established a new standard, as Appellants insist, that standard is *not* that absolute immunity does not apply to advocacy functions where a prosecution is void from the start due to fabrication of evidence by prosecutors.  The *Fields* decision did *not* lift absolute immunity from the prosecutor's advocacy functions because the prosecutor fabricated evidence. Rather, the Seventh Circuit found that absolute immunity did not apply to investigatory acts that occurred more than a month prior to Mr. Fields's arrest.  In opining that absolute immunity applied to the prosecutors' acts of procuring false testimony in preparation for the retrial in 1998, *id.* at 1115–16, the court recognized that absolute immunity applies to advocacy functions no matter how heinous the behavior.


**2. Application of the Doctrine of Absolute Immunity Did Not Deprive Appellants of an Opportunity to Litigate Their Claims of Fabrication of Evidence Against Spota, Lato, and the DA's Office**

A major criticism of absolute immunity for prosecutors is that they are not held accountable for egregious behavior, such as using false evidence, suppressing exculpatory evidence, and eliciting misleading testimony.  (*See* Docket Entry #91 at

29–30, citing articles.)  Setting aside whether absolute immunity sometimes allows prosecutors to act with impunity, that did not occur here.  As discussed in Point I(B)(1), *supra*, the district court did *not* apply absolute immunity to Appellants' claims that Spota, Lato, and the DA's Office fabricated evidence in conducting an investigation based on the complaints of the Sentosa Defendants.  Rather, acknowledging that Appellants' allegations—that Spota, Lato, and the DA's Office "spearhead[ed] the investigation of [Appellants] due to the police's decision not to take action" and "manufactured false evidence and testimony during their investigation of [Appellants]" (SPA19, *Anilao I*, 774 F. Supp.2d at 482)—addressed purely investigatory actions, Judge Bianco denied the motion to dismiss and allowed Appellants to litigate their claims of unconstitutional investigation against Spota, Lato, and the DA's Office for almost nine years until the district court granted summary judgment in favor of each of them on the ground that Appellants had no facts to support their claims of an unconstitutional investigation. Because Appellants had their day in court, it was unnecessary to dispense with absolute immunity in this case.

### 3. Spota, Lato, and the DA's Office Did Not Act Without Jurisdiction in Conducting the Grand Jury Investigation of Appellants and in Pursuing the Indictment

Appellants assert accurately that "unless a prosecutor proceeds in the clear absence of all jurisdiction," he is entitled to "absolute immunity . . .  for those

prosecutorial activities intimately associated with the judicial phase of the criminal process." *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987) (applying the rule of *Stump v. Sparkman*, 435 U.S. 349, 356 (1978), that judges are not entitled to absolute immunity from § 1983 actions when they act in "the clear absence of all jurisdiction" to prosecutors). However, allegations[9] that Lato, with Spota's approval, elicited false testimony before the grand jury and improperly instructed the grand jury do *not* support a conclusion that the prosecutors were acting in the complete absence of jurisdiction, since presenting matters to a grand jury—even if done in a dishonest manner—falls plainly within the authority of a prosecutor. *See generally Imbler v. Pachtman*, 424 U.S. 409, 431 n.33 (1976) (listing functions of prosecutor). A prosecutor who presents a matter to the grand jury acts within his jurisdiction "regardless of the wrongfulness of his motive or the degree of injury caused." *Bernard v. Cty. of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004).

The district court held correctly that the fact that the Second Department issued a writ of prohibition enjoining prosecution of the Appellants on the grounds

---

[9] Although Judge Bianco allowed Appellants to go forward with their claims that Spota, Lato, and the DA's Office engaged in unconstitutional actions during the investigation into the complaints of the Sentosa Defendants against Appellant, the district court ultimately rejected Appellants' rendition of the facts and granted summary judgment to Spota, Lato, and the DA's Office, finding that "even construing the facts in the light most favorable to plaintiff[s], no rational jury could find that [Spota and Lato] knowingly fabricated evidence during the investigation, or otherwise violated plaintiffs' constitutional rights in the investigative phase of the case." (SPA72; *Anilao II*, 340 F. Supp. 3d at 250.)

that such prosecution violated the Thirteenth Amendment rights of the Nurse-Appellants and the First Amendment right of the Attorney-Appellant, *see Matter of Vinluan v. Doyle*, did not deprive Spota, Lato, and the DA's Office of jurisdiction to present the case to the grand jury. (SPA23–27; *Anilao I*, 774 F. Supp.2d at 485–490.) Absolute immunity protects against civil actions for acts undertaken "in excess of . . . jurisdiction," *Stump*, 435 U.S. at 356, as long as the defendant has not "acted in the clear absence of all jurisdiction." *Id.* at 357 (internal citation omitted). A prosecutor possesses "at least a colorable claim of authority" and, thus, acts within his jurisdiction, if "the pertinent statutes may have authorized prosecution for the charged conduct." *Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005).

As the district court noted, the Second Department in *Matter of Vinluan* found that prosecution of the Appellants "would be an excess in power," 60 A.D.3d at 245, 873 N.Y.S.2d at 78, *not* that a prosecution would be in the clear absence of jurisdiction. (SPA23–24; *Anilao I*, 774 F. Supp.2d at 486.) This is consistent with the New York Court of Appeals's comment that the inquiry on a petition for writ of prohibition "is not limited to whether the court has subject matter jurisdiction over the proceeding; "prohibition is [also] available . . . to prevent a court from exceeding its authorized powers in a proceeding over which it has jurisdiction.'" *Holtzman v. Goldman*, 71 N.Y.2d 564, 569, 523 N.E.2d 297, 300 (1988) (quoting *La Rocca v. Lane*, 37 N.Y.2d 575, 578–579, 376 N.Y.S.2d 93, 338 N.E.2d 606 (1975), *cert.*

*denied*, 424 U.S. 968 (1976)) (alterations in original). Applying this Court's precedent in *Barr*, 810 F.2d 358, Judge Bianco found that the fact that the Second Department based its writ of prohibition on constitutional grounds did not compel a finding that Spota, Lato, and the DA's Office acted without jurisdiction, because the New York Penal Law clearly authorized the prosecutors to bring charges of conspiracy, *see* N.Y. Penal Law § 105.00, criminal solicitation, *see N.Y. Penal Law* § 100.00, and engendering the welfare of a child, *see* N.Y. Penal Law § 260.10, 260.25, 260.32, 260.34. (SPA25; *Anilao I*, 774 F. Supp.2d at 487–488.) Indeed, Justice Doyle of the Suffolk County Supreme Court specifically found "the Court has inspected the minutes of the Grand Jury proceedings and finds the evidence legally sufficient to support the charges contained in the indictment." (A1415, A1419.) In issuing its writ of prohibition in *Matter of Vinulan*, the Second Department was not asked to determine whether the grand jury minutes supported the charges in the indictment and made no finding as to whether the DA's Office had the authority to bring charges under the Penal Code provisions cited in the indictment.

In *Barr*, this Court held that the New York Criminal Court's dismissal of a criminal information for criminal contempt, brought against an attorney who asserted his Fifth Amendment right to remain silent in an examination in connection with a state securities fraud investigation, did not lift the absolute immunity of the

prosecutors who brought the charge where the Criminal Court acknowledged that it was within the jurisdiction of the state attorney general to charge criminal contempt for concealment in a securities fraud investigation. *Barr*, 810 F.2d at 361–362. Appellants have made no effort to address *Barr* or cases from other jurisdictions cited by the district court and holding "that absolute immunity still applies where a prosecutor brought a case in violation of a defendant's constitutional rights but was otherwise acting within his role as an advocate."[10] (SPA26; *Anilao I*, 774 F. Supp. 2d at 488.) Accordingly, they must concede that this case does not present a matter of first impression and that they cannot articulate a basis for altering the rule that

---

[10] *See Walker*, 413 F. App'x 481(prosecutor entitled to absolute immunity from monetary liability for claim that he prosecuted plaintiff in retaliation for plaintiff's decision to seek public office and in violation of the First Amendment); *Nivens v. Gilchrist*, 444 F.3d 237, 250 (4th Cir. 2006) (prosecutor was entitled to absolute immunity in § 1983 action alleging that indictment and pending prosecution of plaintiffs violated their double jeopardy rights); *Alvarez v. Haley*, No. 10–cv–4263 (PAM/JJG), 2011 WL 825694, at *2 (D. Minn. Feb. 9, 2011) ), *rep. & rec. adopted*, 2011 WL 839391 (D. Minn. Mar. 7, 2011) (recommending that plaintiff's claim that county attorney violated double jeopardy clause by bringing new charges against plaintiff be summarily dismissed because county attorney was entitled to prosecutorial immunity); *Thomas v. County of Hawaii*, No. Civ. 07–00251 (JMS/LEK), 2008 WL 4483792, at *5–6 (D. Hawai'i Oct. 1, 2008) (prosecutors were entitled to absolute immunity for plaintiff's claim that they violated his constitutional rights by, inter alia, instituting prosecution in violation of double jeopardy clause); *cf. Hartman v. Moore*, 547 U.S. 250, 261–62 (2006) (action for retaliatory prosecution in violation of the First Amendment cannot be brought against the prosecutor, who is absolutely immune; rather defendant must be a nonprosecutor who influenced but did not make the decision to prosecute). (SPA26; *Anilao I*, 774 F. Supp. 2d at 488–89.)

absolute immunity applies to advocacy functions, even it the decision to prosecute infringes on constitutional rights.

II.      **THE DISTRICT COURT CORRECTLY FOUND THAT APPELLANTS FAILED TO RAISE A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER SPOTA DIRECTLY PARTICIPATED IN THE ALLEGED FABRICATION OF EVIDENCE OR ANY OTHER UNCONSTITUTIONAL ACT DURING THE INVESTIGATIVE PHASE**

   A.      **Standard Of Review**

This Court "review[s] the district court's grant of summary judgment *de novo*, construing the evidence in the light most favorable to the non-moving party." *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019) (quoting *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 118 (2d Cir. 2001)). This means that the Court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Id.* (quoting *Johnson v. Goord*, 445 F.3d 532, 534 (2d Cir. 2006)). However, the Court should not "weigh the evidence, or assess the credibility of the witnesses, or resolve issues of fact." *Id.* (quoting *United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994)). "To defeat summary judgment, . . . nonmoving parties 'must do more than simply show that there is some metaphysical doubt as to the material facts,' *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538

(1986), and they 'may not rely on conclusory allegations or unsubstantiated speculation.' *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 428 (2d Cir.2001) (internal quotation marks omitted)." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005). "[A] nonmoving party 'must offer some hard evidence showing that its version of the events is not wholly fanciful.'" *Id.* (quoting *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir.1998)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## B.       Points And Authorities

It is well settled that an individual may be held liable for a constitutional deprivation pursuant to 42 U.S.C. § 1983 only if he is personally involved[11] in the deprivation. Merely holding a high position of authority does not confer liability. *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004).

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the

---

[11] Appellants argue primarily that Spota's personal involvement is sufficient to hold the County liable under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). However, *Monell* does not serve as a basis for Spota's individual liability, and, thus, Spota will not address that aspect of Appellants' argument but will only address the personal involvement to the extent Appellants are trying to hold him personally liable.

violation through a report or appeal, failed to remedy the wrong, (3) the
defendant created a policy or custom under which unconstitutional
practices occurred, or allowed the continuance of such a policy or
custom, (4) the defendant was grossly negligent in supervising
subordinates who committed the wrongful acts, or (5) the defendant
exhibited deliberate indifference to the rights of inmates by failing to
act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

Appellants' basis for asserting "Spota's aggressive personal involvement in

this case" (Docket Entry #91 at 47) is founded solely on innuendo and conjecture

which does not meet the standard of "hard evidence showing that their version of the

events is not wholly fanciful." *Jeffreys*, 426 F.3d at 554. In spite of the challenge

posed by the district court's finding that there was "no evidence in the record from

which a rational jury could find that Spota or Lato violated plaintiffs' constitutional

rights during the investigative phase" (A1679–80; *Anilao II*, 340 F. Supp. 3d at 250),

Appellants have utterly failed on appeal to point to evidence in the record that creates

a genuine issue of material fact as to whether Spota participated in the investigation

of Appellants beyond merely facilitating a means for the Sentosa Defendants to

express their concerns. They certainly have not identified an iota of evidence that

Spota was involved in any way with the gathering of evidence, and certainly no

evidence that he was involved in fabricating evidence to be presented to the grand

jury. Appellants make much of Spota's alleged involvement in the drafting of the

indictment, but both he and Lato are absolutely immune from suit for their advocacy

functions, so even if there were evidence that he participated in the drafting of the indictment, it would be irrelevant. *See supra* Point I(B).

It appears to be Appellants' theory that because Spota has been accused of a "pervasive" "pattern of corruption" in office in a series of wholly separate matters he must have acted improperly in the investigation of Appellants. (App.'s Brief at 50–51.) This is precisely the type of "bad acts" or "other crimes" that is deemed inadmissible under Rule 404(b)(1) of the Federal Rules of Evidence. While "evidence of uncharged criminal activity is not considered other crimes evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial," *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (quoting *United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir.1997)), Appellants have pointed to no connection between any other conduct, charged or uncharged, and the allegations against Spota in this matter, and, in any event, speculation is not evidence. *Fujitsu Ltd.*, 247 F.3d at 428.

There is, thus, no basis for this Court to grant Appellants' request (Docket Entry #91 at 51) to take judicial notice of Spota's conviction for covering up civil rights violations by a Suffolk County police officer in an incident as detailed in a *Newsday* article. (A1457–60.) First, Appellants make no effort to show a

31

connection between that incident, in which Spota participated in the cover-up of the police officer's assault on a man who stole a duffel bag from the officer's personal vehicle, and their allegation in this case that Spota participated in the investigation of Appellants and the fabrication of evidence against them. Second, Appellants have not identified the conviction by date or court or even a *Newsday* article, so the Court has insufficient basis upon which to take notice, even if the conviction were relevant.

Similarly, a May 9, 2016 op-ed piece by Spota's political rival Suffolk County Sheriff Vincent DeMarco (A1485–86) complaining about a lack of cooperation by the DA's Office under Spota in DeMarco's 2012 investigation of an illegal gambling operation run by Edward Walsh, the head of the Suffolk County Conservative Party and former Corrections Lieutenant then employed by the Sheriff's Office and generally accusing Spota of political corruption is not evidence that Spota engaged in a corrupt investigation of Appellants in 2006. Moreover, an Assistant U.S. Attorney's summary of the proposed testimony of Sheriff DeMarco and others in support of a motion in limine in Walsh's criminal trial for theft of funds and wire fraud—including claims that Spota did not investigate Walsh's alleged corruption— with attached exhibits (A1488–1545) does not bolster Appellants' factually unsupported allegation that Spota oversaw an unlawful investigation of Appellants and manufactured false evidence against them for presentation to the grand jury. It does not logically follow from the fact that some people called for Spota's

resignation following the inquiry into Walsh's corruption that Spota engaged in behavior that violated Appellants' constitutional rights ten years earlier. Likewise, a series of *Newsday* articles in the first half of 2016 reporting that allegations of a defense counsel's 2007 bribery of a Suffolk County ADA did not result in indictments (A1462–1483) sheds no light on what role Spota played in the investigation of Appellants in 2006.

Appellants argue that Spota's assignment of their case to Lato—an ADA whom other supervisors in the DA's Office had told Spota was "virtually unsupervisable" (A1355–1356)—gave a strong signal that the investigation of Appellants should be aggressive. As evidence of Lato's "erratic behavior," they point to the fact that Lato was sued in *Kanciper v. Lato*, 13-cv-871[12], "*inter alia*, for violating the policy of the District Attorney's Office against 'DA Shopping.'" (App.'s Brief at 53.) In *Kanciper*, the plaintiff, who was indicted by a grand jury for three counts of animal cruelty and two counts of endangering a minor and was "convicted of endangering the welfare of a child after she injected a dog with a tranquilizer in the presence of a child," *People v. Kanciper*, 100 A.D.3d 778, 779, 954 N.Y.S.2d 146, 147 (2d Dep't 2012), brought suit in the U.S. District Court of the Eastern District of New York against Lato, as prosecuting attorney, and Spota, as DA, after her conviction was overturned by the Second Department due to

---

[12] Appellants provide no more detailed citation to this case.

insufficient evidence.  *See id.*  The district court granted summary judgment in favor of Lato and Spota, *Kanciper v. Lato*, No. 13-CV-0871 (SJF) (SIL), 2016 WL 11507274 (E.D.N.Y. Dec. 1, 2016), and this Court affirmed, 718 F. App'x 24 (2d Cir. 2017).  Significantly, the district court held that aside from testimony by one bureau chief in the DA's Office that the *Society for the Prevention of Cruelty to Animals* ("SPCA")—and *not* Lato—was "DA shopping" in 2010 when the SPCA went to Lato after another bureau in the DA's Office denied their request for a search warrant of Kanciper's property, there was no evidence that the DA's Office had a policy prohibiting "DA shopping" or prohibiting an ADA from working an investigation that another bureau rejected.  *Kanciper,* 2016 WL 11507274, at *15. In fact, the district court noted that "no internal policy of the DA's Office seemingly prevented Lato, who was also interested in animal cruelty cases, from handling such cases even though he was chief of the ICB."  *Id.* at n.16.  Significantly, the district court also found that there was no evidence of Spota's personal involvement in the alleged constitutional violations by Lato and of his failure to supervise Lato.  *Id.* at *18.  Clearly a reference to *Kanciper* does not strengthen Appellants' claim against Spota, and it certainly offers no evidence of Spota's personal involvement in the allegedly unconstitutional investigation of Appellants in 2006.

Finally, in response to Appellants' assertion that "no objective or fair individual, reviewing this indictment, could rationally conclude that this prosecution

was constitutionally permissible" (App.'s Brief at 53), Spota refers Appellants to Justice Doyle of the Suffolk County Supreme Court, who upheld the indictments in the face of Appellants' motions to dismiss, finding that there was ample evidence before the grand jury to support the charges and that the indictment violated neither the First nor the Thirteenth Amendments to the U.S. Constitution. (A1415–1420.) While it was certainly within "the sound discretion" of the Second Department to come to a different decision, *see Holtzman*, 71 N.Y.2d at 569, 523 N.E.2d at 300, in issuing the writ of prohibition in *Matter of Vinluan*, the appellate court was not directly reviewing the decision of the supreme court denying the motions to dismiss the indictment and it did not comment on the findings of the trial court.

III.     **THE DISTRICT COURT CORRECTLY FOUND THAT SPOTA WAS ENTITLED TO SUMMARY JUDGMENT BECAUSE APPELLANTS FAILED TO POINT TO EVIDENCE FROM WHICH A JURY COULD INFER THAT SPOTA'S CONDUCT DURING THE INVESTIGATIVE PHASE VIOLATED APPELLANTS' CONSTITUTIONAL RIGHTS**

A.     **Standard Of Review**

"[T]he familiar standards that govern resolution of motions for summary judgment apply equally to such motions based on an assertion of qualified immunity." *Sloley v. VanBramer*, 945 F.3d 30, 36 (2d Cir. 2019) (citing *Tolan v.*

*Cotton*, 572 U.S. 650, 656–657 (2014)).  Qualified immunity claims at summary judgment employ a two-part inquiry: (1) "whether the facts, '[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right,'" *Tolan*, 572 U.S. at 655–56 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)) (alterations in original), and (2) "whether the right in question was 'clearly established' at the time of the violation." *Id.* at 656.  It is within this Court's discretion to decide the order in which it will analyze the two prongs.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  "But under either prong, [the Court] may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan*, 572 U.S. at 656.

### B.  Points And Authorities

The first sentence of Appellants' qualified immunity argument completely misrepresents the holding of the district court.  Judge Bianco absolutely did *not* hold "that the substantial investigative work by Lato at the personal direction of Spota, in which evidence relating to the Appellants' criminal liability was fabricated and the Appellants were deceived as to Lato's purpose, did not violate the Appellants' constitutional rights." (App.'s Brief at 59.)[13]  Rather, after carefully analyzing the

---

[13] Appellants spend four solid pages of their qualified immunity argument attempting to debunk a false narrative, *i.e.*, that Spota, Lato, and the DA's Office sought absolute immunity for their investigative conduct.  (Docket Entry #91 at 59–62.)

record, the district court concluded "that Lato and Spota are entitled to summary judgment because, even construing the facts in the light most favorable to plaintiff, no rational jury could find that they knowingly fabricated evidence during the investigation, or otherwise violated plaintiffs' constitutional rights in the investigative phase of the case." (SPA72; *Anilao II*, 340 F. Supp. 3d at 250.) In other words, Appellants did not satisfy the first prong of the qualified immunity inquiry, that is, "whether the facts, '[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right.'" *Tolan*, 572 U.S. at 655–56 (quoting *Saucier*, 533 U.S. at 201) (alterations in original).

Judge Bianco's decision on summary judgment gave Appellants a clear directive for appeal: to overcome the grant of summary judgment, Appellants must point to "concrete particulars," from which a reasonable juror could infer that "Lato presented . . . false evidence during the presentation to the Grand Jury, [or] that he learned of any false evidence (or conspired to create it) during the investigative stage of the case." (SPA73, SPA72; *Anilao II*, 340 F. Supp. 3d at 251, 250.) This Appellants have failed to do. Indeed, they have ignored the district court's finding that Spota and Lato did not violate Appellants' constitutional rights, and, having failed to challenge that conclusion of law, they have waived any argument that the

_____

That matter was resolved by the district court in *Anilao I* and reiterated in *Anilao II*. (SPA72; *Anilao II*, 340 F. Supp.3d at 249.) Spota addressed absolute immunity in Point I(B) of its argument and will not repeat the argument here.

district court erred in finding there was no denial of constitutional rights. "It is well established that an argument not raised on appeal is deemed abandoned, and [this Court] will not ordinarily consider such an argument unless manifest injustice otherwise would result." *United States v. Black*, 918 F.3d 243, 256 (2d Cir. 2019) (quoting *United States v. Quiroz*, 22 F.3d 489, 490-91 (2d Cir. 1994)). Moreover, having failed to challenge the district court's conclusion of law that there was not a constitutional violation in their Opening Brief, Appellants are precluded from raising the issue in their Reply Brief. *See McCarthy v. S.E.C.*, 406 F.3d 179, 186 (2d Cir. 2005).

Appellants claim that Lato's zeal to indict them led him to contrive evidence. However, zeal to indict is part of the advocacy function for which Spota and Lato are entitled to absolute immunity. *See supra* Point I(B). Moreover, to the extent the proffered evidence of zeal was related to the investigation, such as, for example, evidence that Spota and Lato met with representatives of the Sentosa Defendants to hear their concerns about the Appellant-Nurses walking off the job, such evidence did not support an inference that Spota and Lato fabricated evidence. A prosecutor can be zealous—even overly zealous—without falsifying evidence.

Even if it were true that the Sentosa Defendants managed to catch Spota's ear in a way that the average citizens could not,[14] it does not follow that Spota, Lato, or the DA's Office offered to manufacture evidence to support their complaints and, in fact, Appellants offer no such evidence and make no such claim. The record shows that Spota simply met with representatives of the Sentosa-Defendants on May 31, 2006. (A1245, 1341–1342, 1359; Dist. Ct. Dkt. Entry #116-10, Ex. G, 47.) He did not discuss a course of action with those representatives and did not plan any future meetings (Dist. Ct. Dkt. Entry #116-10, Ex. G, 59–60), choosing to wait until the State Department of Education had concluded its own investigation before proceeding further (A1348). Only a few months later did he assign the matter to Lato to investigate. (Dist. Ct. Dkt. Entry #116-10, Ex. G, 60–61, 64.) At some point, Spota introduced Lato to Fensterman, the attorney for the Sentosa-Defendants at a lunch meeting, but Lato interacted mainly with the two investigators who accompanied Fensterman, while Spota and Fensterman chatted. (A1366, 1369–1370; Dist. Ct. Dkt. Entry #116-10, Ex. G, 60–61, 67–68.) Spota told Fensterman that the DA's Office would be fair in its investigation (Dist. Ct. Dkt. Entry #116-10, Ex. G, 69) and never met with Fensterman again after the lunch meeting (Dist. Ct.

---

[14] Given the serious nature of the complaint made by the Sentosa Defendants, *i.e.*, that specially trained nurses employed to provide around-the-clock care to extremely vulnerable children resigned *en masse* just before the Easter and Passover holidays, *see supra* pp. 6–8, it was perfectly appropriate for Spota to agree to meet with them to hear the details of their allegations.

Dkt. Entry #116-10, Ex. G, 70; Dist. Ct. Dkt. Entry #116-12, Ex. I, 82).  Likewise, Lato never met with Fensterman again, although he paid a shiva call following the death of Fensterman's father.  (Dist. Ct. Dkt. Entry #116-12, Ex. I, 82–83.)  No plan to fabricate evidence could be inferred from these interactions.

Lato admits to spending, at most, a couple of minutes with grand jury witnesses to tell them generally what he was going to ask.  He did not discuss their testimony with them (A369–370, 810–813, 1384–1386), and Appellants have pointed to no evidence that Spota, Lato, or anyone from the DA's Office met with grand jury witnesses and told them to lie or otherwise elicited perjury from them. To the extent that Appellants believe that witnesses for the Sentosa-Defendants testified falsely, the district court correctly stated, "an inference cannot be drawn from that testimony alone that Lato or Spota had any involvement in the knowing fabrication of evidence prior to the Grand Jury proceedings, despite plaintiffs' conclusory assertions to the contrary."  (SPA73; *Anilao II*, 340 F. Supp. 3d at 251.)

Indeed, Appellants assert that "Lato then proceeded to fabricate a case against Mr. Vinluan" (Docket Entry #91 at 63) by allowing Sentosa-Defendant Luyun to give hearsay testimony to the grand jury and by making misleading statements in response to questions from the grand jury (Docket Entry #91 at 64).  Setting aside the fact that Lato and Spota, as his supervisor, are absolutely immune from suit for presentations to the grand jury, *see* Point I(B), *supra*, fabricating a *case* is not the

same as fabricating *evidence*. A clear example of the fabrication of evidence is given in *Hill v. City of New York*, 45 F.3d 653 (2d Cir. 1995), a case cited by Appellants. In *Hill*, the prosecutor fabricated evidence when in the course of investigating child abuse, he created two videotape interviews of the child victim, only the second of which implicated the child's mother upon coaching by the prosecutor, he used only the inculpatory tape to indict the mother and suppressed the exculpatory tape. *Id.* at 658. Because it was not clear from the complaint whether the prosecutor was acting as an investigator or as an advocate in interviewing and videotaping the child, the court did not find the prosecutor was absolutely immune from suit for preparation of the videotape, *id.* at 663. However, the prosecutor was entitled to absolute immunity for malicious prosecution of the mother, presenting false evidence to and withholding exculpatory evidence from the grand jury, and suppressing *Brady* material. *Id.* at 661. Appellants have offered no evidence to show that during the investigation Lato, Spota, or anyone from the DA's Office intentionally obtained false statements from Luyun to be presented to the grand jury.

Absent evidence that Luyun's allegedly false statements were obtained during the investigatory stage, and that they were fabricated with Spota's knowledge or acquiescence, Spota is entitled to absolute immunity for claims related to Luyun's allegedly false testimony before the grand jury and Lato's allegedly misleading statements to the grand jury. *See supra* Point I(B). Furthermore, absent any

evidence of a constitutional violation, Spota is not required to show that he is entitled to qualified immunity, even if he is not protected by absolute immunity. And to the extent that this Court addresses Appellants' qualified immunity argument, Spota is entitled to qualified immunity because Appellants have not satisfied the first prong of the qualified immunity inquiry, that is, whether Spota violated Appellants' constitutional rights. Moreover, Appellants have waived their qualified immunity argument by failing to address the district court's conclusion that Spota did not violate Appellants' constitutional rights and, thus, abandoning the argument.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed in its entirety.

Dated:     August 14, 2020          Respectfully submitted,


/s/ Stephen L. O'Brien
Stephen L. O'Brien, Esquire, SLO 353
O'Brien & O'Brien, LLP
Attorneys for Defendant-Appellee
      Thomas J. Spota III
168 Smithtown Boulevard
Nesconset, NY  11767
Telephone:  (631) 265-6660
Facsimile:  (631) 265-3991
Email:  stephen@obrienandobrienlaw.com

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g), I hereby certify that the foregoing brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Rule 32(a)(6). The brief is composed in a 14-point proportional typeface, Times New Roman.

I further certify that the foregoing brief complies with the word limit of Fed. R. App. P. 32(a)(7)(B)(i) in that it contains 10,468 words. The word count was made by use of the word count feature of Microsoft Word, which is the word processor used to prepare the foregoing brief.

Dated:     August 14, 2020       /s/ Stephen L. O'Brien

                                        Stephen L. O'Brien

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that on this 14th day of August 2020, he caused the foregoing brief to be served by electronically filing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to all parties of record.

Respectfully submitted,

/s/ Stephen L. O'Brien
Stephen L. O'Brien, Esquire, SLO 353
O'Brien & O'Brien, LLP
Attorneys for Defendant-Appellee
    Thomas J. Spota, III
168 Smithtown Boulevard
Nesconset, NY  11767
Telephone:  (631) 265-6660
Facsimile:  (631) 265-3991
Email:  stephen@obrienandobrienlaw.com